**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

SENECA RESOURCES CORPORATION, :
:
           Plaintiff, :
:
      v. :     Civil Action No. __1:16-cv-289____
:
HIGHLAND TOWNSHIP, ELK COUNTY, :
PENNSYLVANIA AND THE HIGHLAND :
TOWNSHIP BOARD OF SUPERVISORS, :
ELK COUNTY, PENNSYLVANIA :
:
:
       Defendants. :

---

## COMPLAINT

---

Seneca Resources Corporation ("Seneca"), by and through its undersigned counsel, for its complaint states as follows:

### Introduction

1.      Seneca brings this action to strike portions of the Home Rule Charter of Highland Township, Elk County, Pennsylvania adopted November 8, 2016 ("Home Rule Charter") and temporarily and permanently enjoin Highland Township and its Board of Supervisors from enforcing the Home Rule Charter, which, *inter alia*, illegally purports to ban otherwise properly permitted and regulated underground injection control ("UIC") wells used for the disposal of natural gas brines within Highland Township.[1]  The Home Rule Charter directly prevents Seneca from converting certain of its natural gas wells located in Highland Township into UIC wells **despite the fact that Seneca has received a permit to do exactly that from the United States**

---

[1]      A copy of the Home Rule Charter is attached hereto as Exhibit A.

**Environmental Protection Agency ("EPA")**.   The Home Rule Charter attempts to ride roughshod over the comprehensive regulations set out in the Pennsylvania Oil and Gas Act.  It strips corporations of their rights in violation of the Supremacy Clause of the United States Constitution.   It vitiates the protections afforded Seneca by the First, Fifth and Fourteenth Amendments to the Constitution.   And it restricts the establishment of UIC wells which are necessary to the environmentally sound disposal of natural gas brines and produced waters resulting from natural gas operations in Pennsylvania.

2.      Astonishingly, portions of the Home Rule Charter are substantially identical to an ordinance passed by the Highland Township Board of Supervisors in 2013-2014 **that was found to be unconstitutional by this Court just three months ago**.   *See Seneca Resources Corporation v. Highland Township, Elk County, Pennsylvania et al*., Docket No. 1:15-cv-00060-SPB (W.D. Pa. August 12, 2016), Document 84.  Indeed, in that case, Highland Township and the Highland Township Board of Supervisors **conceded** that the ordinance was unconstitutional; yet now a Home Rule Charter is in place that illegally attempts to replicate the effect of that unconstitutional ordinance.  Further, the Home Rule Charter is also substantially identical to a Grant Township ordinance that this Court found unconstitutional in *Pennsylvania General Energy Company, LLC v. Grant Township*, Document Nos. 113 and 114 (W.D. Pa. October 14, 2015).

3.      Moreover, the Home Rule Charter purports to nullify the extensive and comprehensive review of UIC well permit applications conducted by the EPA – which includes an opportunity for public comment – and replace EPA's role in environmental regulation with that of an unconstitutional local law.

2

4.      The parts of the Home Rule Charter that purport to prohibit UIC wells within Highland Township are unconstitutional for all the same reasons that Highland Township's prior legislative enactments were held to be unconstitutional by this Court.  Pennsylvania's Home Rule Charter and Optional Plans Law, 53 Pa. Con. Stat.  §§ 2901-3171, does not give local municipalities the power to adopt unconstitutional regulations or laws via the adoption of a home rule charter.

5.      Unless the relief requested by the complaint is granted, Seneca will continue to suffer irreparable harm for which it cannot be compensated by money damages alone. As more fully set forth below, because, *inter alia*, Defendants' attempt to regulate UIC wells is preempted by both federal and Pennsylvania law, the parts of the Home Rule Charter that purport to supplant existing state and federal law are void and unenforceable and any enforcement of the Home Rule Charter by Defendants is a violation of Seneca's rights.

**Jurisdiction and Venue**

6.      This Court has jurisdiction over Counts I and IV under 28 U.S.C. § 1331; Counts VII, VIII, and IX under 42 U.S.C. § 1983; and over the remaining Counts, which arise under Pennsylvania law, pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

7.      Seneca seeks equitable relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Township is located in this judicial district and the events and acts giving rise to Seneca's claims occurred in this judicial district.

9.      This action belongs on the Erie docket of the Court pursuant to LCvR 3.

**Parties**

3

10.     Plaintiff Seneca is a Pennsylvania corporation with a business address at 5800 Corporate Drive, Suite 300, Pittsburgh, PA 15237.  Seneca is engaged in oil and natural gas exploration and production.

11.     Defendant Highland Township (the "Township") is a Second Class Township located in Elk County, Pennsylvania with a business address at PO Box 505, 363 Pennsylvania Avenue, James City, PA 16743.

12.     Defendant Highland Township Board of Supervisors ("Supervisors," collectively with the Township, the "Defendants") is the governing body of the Township.

<strong>Factual Background</strong>

**A.     *Seneca's Environmental Permitting Activities Related to Highland Township***

13.     On June 25, 2012, Seneca applied to EPA Region III for a permit to construct and operate a UIC Class IID commercial injection well, identified as Well No. 38268, located in the Township.  Seneca owns the property upon which existing natural gas Well No. 38268 is located.

14.     Pennsylvania regulates wells utilized for disposal of oil and gas drilling and production fluids via rules adopted pursuant to the Pennsylvania Oil & Gas Act of 2012, 58 Pa. Con. Stat. §§ 2101 *et seq.* ("Oil & Gas Act"),[2] and the Clean Streams Law, 35 Pa. Stat. Ann. §§ 691.1 *et seq.*  As set forth in 25 Pa. Code § 78.18, Pennsylvania requires two permits for disposal injection wells:  a well permit from the Pennsylvania Department of Environmental Protection ("Department") and a UIC permit from EPA.

15.     With its EPA permit application ("Application"), Seneca proposed to convert existing natural gas Well No. 38268 (API No. 37-047-23835) into an underground injection control ("UIC") Class IID well.  Well No. 38268 was drilled to the Elk 3 Sandstone formation, which is a depleted reservoir.

---

[2]     The Oil & Gas Act is also frequently referred to as Act 13.

16.     On January 28, 2014, following agency review including public participation, EPA Region III issued UIC Permit No. PAS2D025BELK to Seneca ("Permit").

17.     Immediately after receiving its EPA UIC permit, Seneca began working on its Department permit ("DEP Permit"). Seneca could not have done this sooner because Pennsylvania regulations require that Seneca obtain the approved EPA UIC permit prior to applying for the DEP Permit. 25 Pa. Code §78.18(a)(2).

18.     After extensive work to prepare the erosion and sedimentation control plan required by the Pennsylvania regulations and the Department, Seneca submitted the DEP Permit application to the Department on or about November 11, 2014.

19.     On or about January 8, 2015, the Department sought additional information and materials from Seneca relating to proposed surface activities.  Seneca's consultant responded on Seneca's behalf with the requested materials on or about January 11, 2015.  The Department has indicated that the responses were technically sufficient.

**B.     The Township's Prior Illegal Attempts to Deprive Seneca of its Constitutional Rights**

20.     The enactment of the Home Rule Charter is not the first time Defendants have tried to illegally interfere with Seneca's constitutionally-protected right to engage in lawful activities in Highland Township.

21.     On January 9, 2013, the Township adopted Ordinance 1-9 of 2013 which declared, among other things:

> It shall be unlawful for any individual or corporation … to deposit, store, treat, inject or process waste water, "produced" water, "frack" water, brine or other materials, chemicals or by-products that have been used in the extraction of shale gas onto or into the land, air, or waters within Highland Township.  This prohibition shall specifically apply to disposal injection wells.

Ordinance 1-9 of 2013, §4(a).

5

22.     On February 20, 2015, Seneca brought suit in federal court at Docket Number 1:15-cv-00060-SPB alleging constitutional and state law violations.  *See Seneca Resources Corporation v. Highland Township, Elk County, Pennsylvania et al.*, Docket No. 1:15-cv-00060-SPB.   Seneca amended its complaint on April 6, 2015 because Defendants modified their unlawful ordinance (Amendment and Revision of Ordinance No. 1-9 of 2013, hereafter, the "Amended Ordinance") in an effort to escape its repeal in litigation.  A copy of the Amended Ordinance is attached hereto as Exhibit B.

23.     On or about January 8, 2015, the Supervisors sent a letter to the Department regarding Seneca's DEP Permit application advising the Department that: (i) the EPA Permit was invalid on the basis of the Amended Ordinance; and (ii) any well permit issued by the Department would be invalid on the basis of the Amended Ordinance.

24.     At the Department's request, Seneca reviewed the Supervisors' Letter and advised the Department in a written response that the Amended Ordinance - which was unconstitutional and otherwise prohibited by Federal and Pennsylvania law - did not preclude the Department's issuance of the requested UIC Well Permit.

25.     Nevertheless, on August 12, 2015, the Department issued a Suspension Letter (attached hereto as Exhibit C) to Seneca suspending its review of the DEP Permit Application.

26.     The Suspension letter states, in pertinent part:

The Department has completed its technical review of this permit application. However, a conflict between this project and an ordinance adopted by Highland Township entitled Community Bill of Rights Ordinance (Highland Township Ordinance) has been brought to our attention.

*                              *                              *

As a result of the conflict between your application and the Highland Township Ordinance, and the potential for legal action against Department employees being brought pursuant to this local ordinance, the Department has decided to suspend

review of your permit application pending a court decision concerning the validity of the Highland Township Ordinance.  The Department will take a final action regarding the issuance of the permit once a court ruling has been rendered determining the validity of the local ordinance.

*See* Exhibit C.

27.     The Department stated further that it "recognizes that there is a serious question regarding the constitutional validity of the Highland Township Ordinance, and that a similar local ordinance enacted by Blaine Township was determined to be invalid in *Penn Ridge Coal, LLC v. Blaine Township*, 2009 U.S. Dist. LEXIS 84428 (W.D. Pa. Sept 16, 2009)."

28.     The Department based its decision to suspend review on its perception that it was required to consider the Amended Ordinance, and a concern over "the potential" that Department employees could be the subject of legal action pursuant to the Amended Ordinance.

29.     On August 10, 2016, the Supervisors voted to rescind the illegal and unconstitutional Amended Ordinance.  Seneca notified the Department in writing of that development on August 11, 2016.

30.     Thereafter, parties to the prior federal lawsuit reached a settlement that resulted in the entry of a Stipulation and Consent Decree ("Consent Decree"), which was filed on August 11, 2016.  *See* Docket Number 1:15-cv-00060-SPB, Document 82.  A copy of the Consent Decree is attached hereto as Exhibit D.

31.     Paragraphs 13(a)-(g) of the Consent Decree specifically provided that the parties stipulated that Defendants' amended ordinance was unconstitutional and unenforceable:

a.   Section 3 of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) constitutes an impermissible exercise of Highland's legislative authority and is therefore invalid and unenforceable;

b.  Section 3 of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) is also invalid and

7

unenforceable in that it is *de jure* exclusionary in seeking to prohibit entirely the exercise of a legitimate and lawful business activity (to-wit, the development of oil and gas resources and the management of related waste materials);

c.   Section 4(b) and (c) of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013) constitute an impermissible exercise of Highland's legislative authority and are therefore invalid and unenforceable;

d.   Sections 5(a) and (b) of the Highland Community Bill Of Rights Ordinance, as amended (Amendment and Revision of Ordinance No. 1-9 of 2013), are unenforceable as preempted by state law;

e.   Section 5(a) of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional (under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania);

f.   Section 6 of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional (under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania);

g.   Section 7 of the Highland Community Bill Of Rights Ordinance is, on its face, unconstitutional (under both the United States Constitution and the Constitution of the Commonwealth of Pennsylvania);

Document 82, ¶13.

32.   This Court entered an Order adopting the Consent Decree on August 12, 2016. See Document 84.  The Court's Order stated that "[t]he Court hereby specifically adopts as its findings, and as the opinion and order of this Court, those matters stipulated to in ¶¶ 13(a)-(g) of the Stipulation and Consent Decree," conclusively holding that the Amended Ordinance was unconstitutional, invalid and unenforceable.  A copy of the Court's August 12, 2016 Order adopting the Consent Decree is attached hereto as Exhibit E.

### C.   The Home Rule Charter

33.   The Home Rule Charter contains the same legal infirmities as the Amended Ordinance which this Court determined to be unconstitutional.

34.     While purporting to acknowledge well-established limitations on its powers,[3] the Home Rule Charter continues to ban the disposal and storage of Brines within the Township and purports to invalidate state and federal permits which authorize the disposal and storage of Brines within the Township.  Home Rule Charter § 401 provides as follows:

> It shall be unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction.

35.     Home Rule Charter § 404 provides as follows:

> No permit, license, privilege, charter, or other authorization, issued by any state or federal entity, that would enable any corporation or person to violate the rights or prohibitions of this Charter, shall be lawful within Highland Township.

36.     The Home Rule Charter further provides for fines for its violation.  Home Rule Charter § 405 states:

> Any corporation or government that violates any provision of this Charter shall be guilty of an offense and, upon conviction thereof, shall be sentenced to pay the maximum fine allowable under State law.  Each day or portion thereof, and each violation of a section of this Charter, shall count as a separate offense.

37.     Section 406 of the Home Rule Charter purports to create an individual right to enforce its provisions in Highland Township and natural persons domiciled in Highland Township:

> Highland Township, or any natural person domiciled in Highland Township, may enforce all the provisions of this Charter through an action brought in any court possessing jurisdiction over activities occurring with in Highland Township.  In such an action, Highland Township, or the natural person, shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees.

---

[3] The Home Rule Charter provides "[u]nless expanded, altered, or otherwise changed by the provisions of this Charter, the rules of operation for the Highland Township Home Rule municipal corporation shall be the ones provided to second class Townships pursuant to the Second Class Township Code of the Commonwealth of Pennsylvania."  Home Rule Charter § 203.

38.     Section 407 of the Home Rule Charter purports to create standing for a non-person "ecosystems" and "natural communities" to enforce its provisions:[4]

> Ecosystems and natural communities within Highland Township may enforce all the provisions of this Charter through an action brought by Highland Township, or any natural person domiciled in Highland Township, in the name of the ecosystem or natural community as the real party in interest.  Actions may be brought in any court possessing jurisdiction over activities occurring within Highland Township.  Damages shall be measured by the cost of restoring the ecosystem or natural community to its state before the injury, and shall be paid to Highland Township to be used exclusively for the full and complete restoration of the ecosystem or natural community.

39.     Section 408 of the Home Rule Charter also purports to authorize otherwise illegal individual law enforcement by persons that are not authorized to enforce the law:

> If a court fails to uphold this Charter's limitations on corporate power, or otherwise fails to uphold the rights secured by Article One of this Charter, the rights and prohibitions secured by this Charter shall not be affected by that judicial failure, and any natural person may then enforce the rights and prohibitions of this Charter through nonviolent direct action.  If enforcement through nonviolent direct action is commenced, this Charter shall prohibit any private or public actor from bringing criminal charges or filing any civil or other criminal action against anyone participating in nonviolent direct action.  If an action is filed in violation of this provision, the applicable court must dismiss the action promptly, without further filings being required of nonviolent direct action participants.  "Nonviolent direct action" as used by this provision shall mean any nonviolent activities or actions carried out to directly enforce the rights and prohibitions contained within this Charter, provided that those nonviolent activities or actions do not impede or obstruct the movement of emergency vehicles, such as fire trucks or ambulances.

40.     Moreover, the Home Rule Charter purports to invalidate otherwise legal statutes and regulations of the Commonwealth:  "All laws adopted by the legislature of the State of Pennsylvania, or by Congress, and rules adopted by any State or federal agency, shall be the law

---

[4] Sections 104-110 of the Home Rule Charter also purport to create standing for various entities.

of Highland Township only to the extent that they do not violate the rights or prohibitions of this

Charter, or limit the authority of Highland Township or the people of Highland Township to

adopt and enforce greater protections for these rights than afforded by the Pennsylvania

legislature or Congress."  Home Rule Charter § 410.

41.     The Home Rule Charter strips corporations of their status as "persons" under the

Pennsylvania and U.S. Constitutions.  Home Rule Charter § 501 provides as follows:

> Corporations that violate this Charter of the laws of the Township,
> or that seek to violate this Charter or those laws, shall not be
> deemed "persons" to the extent that such treatment would infringe
> the rights or prohibitions enumerated by this Charter or those laws,
> nor shall they possess any other  legal rights, powers, privileges,
> immunities, or duties that would infringe the rights or prohibitions
> enumerated by this Charter or those laws, or the power to assert
> that Highland Township, or the people of Highland Township, lack
> the authority to adopt this Charter or those laws, or the power to
> assert that Highland Township, its officials, or any resident of
> Highland Township are liable for damages to the corporation as a
> result of provisions of this Charter or Township laws.

### D.     Ordinance Consequences

42.     Despite not yet having received the DEP Permit, Seneca has sustained and

continues to sustain injury as a result of the Home Rule Charter.

43.     Even without the DEP Permit, Seneca could be engaged in site work associated

with its planned UIC well.  Seneca estimates that it has approximately three (3) months of site

work.  However, the Home Rule Charter precludes such work.

44.     The existence of the Home Rule Charter means that even when Seneca is issued

the DEP Permit, Seneca will be further delayed by the necessity of completing any final site

work it could have performed while the Department finishes its review of the well permit

application.

45.     As a result of the Home Rule Charter, Seneca is compelled to send its Brines out-of-state at significant expense for disposal at wells not controlled by Seneca and will be forced to do so even after the DEP Permit is issued unless portions of the Home Rule Charter are stricken and Seneca is allowed to complete its preliminary site work.

46.     Moreover, as discussed in greater detail herein, Seneca is continuing to suffer deprivations of its constitutional rights.

## COUNT I

### Preemption by the Safe Drinking Water Act

47.     Paragraphs 1-46 are incorporated herein as if fully set forth.

48.     The Home Rule Charter, *inter alia*, purports to ban the disposal of Brine within the Township.  Home Rule Charter § 401.

49.     The SDWA expressly provides for the disposal of Brine in permitted UIC wells, such as Seneca's.  *See* 42 U.S.C. § 300h(b)(2)(A).

50.     The Township is attempting to impose its own rules upon the oil and gas industry regarding matters already regulated by the federal UIC program and in conflict with the SDWA and the regulations promulgated thereunder.

51.     Municipal laws, including those enacted pursuant to Pennsylvania's Home Rule Charter and Optional Plans Law, 53 Pa. Con. Stat.  §§ 2901-3171, are preempted under federal law when they act as a clear obstacle to the accomplishment of the Congressional purpose and objectives embodied in a statute.

52.     The Home Rule Charter undermines the federally administered UIC program and stands as a clear obstacle to the goals and objectives of the SDWA.  *Id.*

53.     Consequently, the Home Rule Charter is preempted by the SDWA and is, therefore, invalid and unenforceable.

54.     Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

## COUNT II

### Preemption by the Oil & Gas Act

55.     Paragraphs 1-54 are incorporated herein as if fully set forth.

56.     The Oil & Gas Act requires an operator to obtain permits from the Department for the drilling or alteration of any "well," including a well for Brine disposal.  58 Pa. Con. Stat. §§ 3203, 3211.  As such, the Oil & Gas Act directly regulates not only those wells drilled to extract oil and gas, but also wells drilled or altered to provide for Brine disposal.

57.     The regulations adopted pursuant to the Oil & Gas Act specifically regulate the drilling and alteration of wells utilized for Brine disposal.  *See* 25 Pa. Code § 78.18.

58.     The Home Rule Charter expressly prohibits the disposal of Brine in the Township.

59.     Such a prohibition is an impermissible attempt to regulate the development of oil and natural gas, which is exclusively and comprehensively regulated within the Commonwealth by DEP pursuant to the Oil & Gas Act and its implementing regulations.

60.     Section 3302 of the Oil & Gas Act provides, in pertinent part, as follows:

> Except with respect to local ordinances adopted pursuant to the [Municipalities Planning Code ("MPC")] and the act of October 4, 1978 (P.L. 851, No. 166), known as the Flood Plain Management Act, **all local ordinances purporting to regulate oil and gas operations regulated by Chapter 32 (relating to development) are hereby superseded**.  No local ordinance adopted pursuant to the MPC or the Flood Plain Management Act shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas operations regulated by Chapter 32 or that accomplish the same purposes as set forth in Chapter 32.

58 Pa. Con. Stat. § 3302 (emphasis added).

61.     Section 3302 by its terms preempts any local ordinance, like the Home Rule Charter, which attempts to regulate oil and gas development which is already regulated by Chapter 32 of the Oil & Gas Act.

62.     The Home Rule Charter cites no statutory authority for its adoption by the Township.

63.     The Home Rule Charter is not a properly-adopted MPC ordinance.  The Home Rule Charter was also not properly adopted under the Flood Plain Management Act.

64.     The Home Rule Charter's prohibition on disposal and storage of Brine is an attempt to regulate oil and gas development which is expressly regulated by Chapter 32 of the Oil & Gas Act.  *See* 58 Pa. Con. Stat. §§ 3203, 3211; 25 Pa. Code § 78.18.

65.     Therefore, the Home Rule Charter clearly violates Section 3302 of the Oil and Gas Act and is invalid and unenforceable.

66.     Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

## COUNT III

### Impermissible Exercise of Police Power

67.     Paragraphs 1-66 are incorporated herein as if fully set forth.

68.     The Home Rule Charter provides "[u]nless expanded, altered, or otherwise changed by the provisions of this Charter, the rules of operation for the Highland Township Home Rule municipal corporation shall be the ones provided to second class Townships pursuant to the Second Class Township Code of the Commonwealth of Pennsylvania."   Home Rule Charter § 203.

69.     The Pennsylvania Home Rule Charter and Optional Plans Law does not authorize local municipalities to assume broad police powers by enacting a home rule charter.   Rather, local municipalities that adopt a home rule charter possess "…all legislative powers to the same degree held by the legislature unless and until [the legislature] affirmatively and expressly passed legislation to deny that power."   *Nutter v. Dougherty*, 921 A.2d 44, 50, (Pa. Cmwlth. 2007) (en banc).

70.     The Pennsylvania Home Rule Charter and Optional Plans Law specifically prohibits home rule charter municipalities from exercising powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth.   *See* 53 Pa. Con. Stat. § 2962(c).

71.     It is well established that in Pennsylvania, there is no "intent on the part of the legislature to delegate to second class townships vast and extensive police powers."   *Duff v. Northampton Twp.*, 532 A.2d 500, 503 (Pa. Cmwlth. 1987), *aff'd*, 520 Pa. 79, 550 A.2d (quoting *Commonwealth v. Ashenfelder,* 413 Pa. 517, 522, 198 A.2d 514, 516 (1964)).   The Pennsylvania Home Rule Charter and Optional Plans Law does not authorize a home rule municipality to expand its police powers in contravention to existing statutes that limit municipal police powers.

15

72.     The Home Rule Charter's expansion of Highland Township's police power is not within the scope of powers granted to the Township and the Supervisors by the Pennsylvania Home Rule Charter and Optional Plans Law.

73.     The Home Rule Charter is unduly oppressive, arbitrarily interferes with private business, and imposes unnecessary restrictions upon lawful business activities based on the mere allegation and speculation that all disposal and storage of Brine adversely affects the health, safety, and welfare of the residents of the Township.

74.     The Township lacks any evidence to support these oppressive restrictions.

75.     The blanket prohibition established by the Home Rule Charter does not bear any legitimate or rational relationship to the health, safety and welfare of the residents of the Township.

76.     The Home Rule Charter is an impermissible exercise of the Township's police powers and is, therefore, invalid and unenforceable.

77.     Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

### COUNT IV

### Supremacy Clause Violations

78.     Paragraphs 1-78 are incorporated herein as if fully set forth.

79.     The Home Rule Charter purports to strip corporations of legal rights vested in them by virtue of state and Federal law.

80.     In particular, the Home Rule Charter provides that corporations "..shall not be deemed "persons" to the extent that such treatment would infringe the rights or prohibitions enumerated by this Charter or those laws, nor shall they possess any other  legal rights, powers,

privileges, immunities, or duties that would infringe the rights or prohibitions enumerated by this Charter or those laws…" Home Rule Charter § 501.

81.    Under Federal law, corporations are "persons" with the rights to assert various constitutional claims.

82.    The Supremacy Clause of the United States Constitution, Article 6, Clause 2, provides that it is "the supreme Law of the Land."

83.    Consequently, the Home Rule Charter is in violation of the Supremacy Clause and is, therefore, invalid and unenforceable.

84.    Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

## COUNT V

## Exclusionary Zoning

85.    Paragraphs 1-85 are incorporated herein as if fully set forth.

86.    The Home Rule Charter prohibits storage and disposal of Brines anywhere in the Township.

87.    Under Pennsylvania law, a municipal law may not completely exclude a legitimate use.

88.    Seneca's planned UIC well is a legitimate use.

89.    Therefore, the Home Rule Charter constitutes illegal exclusionary zoning under Pennsylvania law and is invalid and unenforceable.

90.    Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

## COUNT VI

### Impermissible Exercise of Legislative Authority

91.     Paragraphs 1-90 are incorporated herein as if fully set forth.

92.     As a home rule municipality, legislation passed by Highland Township cannot conflict with existing state and federal law.  *See* 53 Pa. Con. Stat. § 2961.

93.     The Home Rule Charter purports to regulate the location of uses within the Township and is, therefore, a zoning ordinance.

94.     In Pennsylvania, the Municipalities Planning Code, 53 Pa. Stat. § 10101, *et seq*., provides a comprehensive framework for municipal zoning and land use regulation and is, as the Pennsylvania Supreme Court has stated, the "Legislature's **mandate for the unified regulation** of land use and development."  *Gary D. Reihart, Inc. v. Twp. of Carroll*, 409 A.2d 1167, 1170 (Pa. 1970) (emphasis added).

95.     The Pennsylvania Home Rule Charter and Optional Plans Law does not authorize local municipalities to expand legislative powers simply by enacting a home rule charter. Rather, local municipalities that adopt a home rule charter possess "…all legislative powers to the same degree held by the legislature unless and until [the legislature] affirmatively and expressly passed legislation to deny that power."  *Nutter v. Dougherty*, 921 A.2d 44, 50, (Pa. Cmwlth. 2007) (en banc).

96.     The Pennsylvania Home Rule Charter and Optional Plans Law specifically denies home rule charter municipalities from exercising power or authority contrary to, or in limitation or enlargement of, powers granted by statutes applicable to a class of municipalities, including the Municipalities Planning Code.  *See* 53 Pa. Con. Stat. § 2962(a)(10).

97.     The Home Rule Charter's expansion of Highland Township's legislative power is not within the scope of powers granted to the Township and the Supervisors by the Pennsylvania Home Rule Charter and Optional Plans Law.

98.     The Home Rule Charter's provisions attempting to create municipal zoning and land use regulation violates the limitations of the MPC.

99.     Consequently, the Home Rule Charter is an illegal exercise of legislative authority by the Township and is, therefore, invalid and unenforceable.

100.    Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

### COUNT VII

### First Amendment Violation

101.    Paragraphs 1-100 are incorporated herein as if fully set forth.

102.    The First Amendment to the United States Constitution provides that no law shall abridge "the right of the people . . . to petition the Government for redress of grievances."  U.S. Const. Amend. 1 and Amend .14, § 1.

103.    The Home Rule Charter purports to divest corporations, such as Seneca, of their constitutional right to petition the government for redress of grievances in that it strips corporations of:  (1) their status as "persons" under the law; (2) their right to assert state or federal preemptive laws in an attempt to overturn the Home Rule Charter; and (3) their power to assert that the Township lacks the authority to adopt the Home Rule Charter.  *See* Home Rule Charter§ 501.

104.    Accordingly, the Home Rule Charter violates the First Amendment of the United States Constitution.

105.    Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

## COUNTY VIII

### Substantive Due Process Violation

106.     Paragraphs 1-105 are incorporated herein as if fully set forth.

107.     The doctrine of Substantive Due Process under the Fifth and Fourteenth Amendment of the United States Constitution prohibits, among other things, the government from abrogating a person's constitutional rights.  U.S. Const. Amend. 5 and Amend. 14, § 1.

108.     In enacting the Home Rule Charter, the Township intended to deny corporations, such as Seneca, their legal and long-standing Constitutional rights, including, but not limited to, their rights under the First, the Fifth, and the Fourteenth Amendment of the United States Constitution.

109.     The Township's conduct in abrogating Seneca's interest in environmental and UIC permits at Well No. 38268 is deliberate, arbitrary, irrational, exceeds the limits of governmental authority, amounts to an abuse of official power, and shocks the conscience.

110.     Accordingly, in enacting the Home Rule Charter, the Township has denied Seneca substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution.

111.     Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

### COUNT IX

### Procedural Due Process Violation

112.     Paragraphs 1-112 are incorporated herein as if fully set forth.

113.     The Due Process Clause of the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law".

114.    The prohibition of underground injection of produced fluid within the Township as a direct result of the enactment of the Home Rule Charter significantly and materially devalues Seneca's legal rights and interest related to and/or held within the Township, including Seneca's UIC permit.  U.S. Const. Amend. 5 and Amend. 14, § 1.

115.    The Home Rule Charter provides for no process or procedure which could be utilized by Seneca to challenge the provision of the Home Rule Charter which purports to render invalid any permit that allows underground injection of produced fluid to be conducted within the Township and devalues any legal interests related thereto.

116.    The fact that the Home Rule Charter purports to prohibit corporations, such as Seneca, from petitioning the government for the redress of grievances makes clear that the Amended Ordinance provides for no process or procedure to which Seneca could avail itself to address the deprivation of its legal rights and interests caused by the Home Rule Charter.

117.    Therefore, the Home Rule Charter deprives Seneca of legal rights and interests protected by the Fifth and Fourteenth Amendments of the United States Constitution without providing due process of law.

118.    Further, as a result of Defendants' actions, Seneca has suffered and will continue to suffer hardship, irreparable injury, and damages.  Seneca has no adequate remedy at law.

WHEREFORE, Plaintiff requests that this Court:

(a)     Declare that the Home Rule Charter is preempted by federal and state law;

(b)     Declare that the Home Rule Charter is an impermissible exercise of police power by the Township;

(c)     Declare that the Home Rule Charter is a violation of the Supremacy Clause of the U.S. Constitution;

22

(d)     Declare that the Home Rule Charter constitutes illegal exclusionary zoning;

(e)     Declare that the Home Rule Charter constitutes an impermissible exercise of legislative authority;

(f)     Declare that the Home Rule Charter is a violation of Seneca's First Amendment Rights;

(g)     Declare that the Home Rule Charter is a violation of the Fifth and Fourteenth Amendments to the U.S. Constitution;

(h)     Award compensation and consequential damages pursuant to 42 U.S.C. § 1983;

(i)     Award Plaintiff all fees and costs incurred in this action;

(j)     Issue preliminary and permanent injunctions prohibiting the Township from enforcing the Home Rule Charter and/or otherwise interfering with Seneca's operations within the Township; and

(k)     Grant such other relief as this Court shall deem just and equitable under the circumstances.

Respectfully submitted,


November 29, 2016                    /s/ Brian C. Wauhop
                                     Brian J. Clark
                                     Pa. I.D. No. 45842

                                     Brian C. Wauhop
                                     Pa. I.D. No 306695

                                     Buchanan Ingersoll & Rooney PC
                                     409 N. Second Street, Suite 500
                                     Harrisburg, PA 17101
                                     Telephone: (717) 237-4800

Facsimile:  (717) 233-0852

Stanley Yorsz
Pa. I.D. No. 28979

Megan S. Haines
Pa. I.D. No. 203590

Buchanan Ingersoll & Rooney PC
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
Telephone:  (412) 562-8800
Facsimile:  (412) 562-1041

*Attorneys for Seneca Resources Corporation*