**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SENECA RESOURCES | ) | |
| CORPORATION, | ) | **C.A. No. 16-cv-289 Erie** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | **Magistrate Judge Susan Baxter** |
| HIGHLAND TOWNSHIP, et al., | ) | |
| Defendants. | | |

**MEMORANDUM OPINION[1]**

**On Municipal Authority's Motion to Intervene**

**<u>Introduction</u>**

Plaintiff Seneca Resources Corporation ("Seneca Resources") brought this action to

challenge the constitutionality, enforceability, and validity of the Home Rule Charter (the

"Charter") in Highland Township. Named as Defendants to this action are: Highland Township

and the Township's Board of Supervisors.

Pending before the Court is a motion to intervene filed by Proposed Intervenor, the

Highland Township Municipal Authority ("Municipal Authority"). ECF No. 34. For the

following reasons, the Municipal Authority's motion to intervene will be denied.

**<u>Relevant Procedural History</u>**

Seneca Resources, a corporation engaged in oil and gas exploration and production,

initiated this action on November 30, 2016, challenging the Home Rule Charter[2] which bans

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily
consented to have a United States Magistrate Judge conduct proceedings in this case, including
the entry of a final judgment.

Seneca Resources' ability to create and operate an injection well within the Township. ECF No. 1, page 1. Seneca Resources has requested that the Court strike the entire Home Rule Charter and temporarily and permanently enjoin Highland Township and the Board of Supervisors (the "Board") from enforcing the Charter. Id.

The Municipal Authority seeks to intervene, pursuant to Fed.R.Civ.P. Rule24(a), and alternatively, Fed.R.Civ.P. 24(b), in order to defend the Charter and bring counterclaims[3] against Seneca Resources. Both Plaintiff and Defendants oppose this motion to intervene.

**Intervention under Federal Rule 24**

Rule 24 provides for intervention as a matter of right and permissive intervention. Fed.R.Civ.P.24 (a) and (b).[4] To qualify for intervention as a matter of right under Rule 24(a)(2), four requirements must be met: 1) the application must be timely, 2) the applicant must have sufficient interest in the lawsuit, 3) the interest must be affected or impaired by the disposition of the lawsuit, and 4) the interest must not be adequately represented by an existing party. United States v. Territory of the Virgin Islands, 748 F.3d 514, 519 (3d Cir. 2014). Additionally, it is

---

[2] Seneca alleges that the Home Rule Charter is preempted by the federal Safe Drinking Water Act and the state Oil and Gas Act, is an impermissible exercise of police power and legislative authority, and is violative of the Supremacy Clause, the First Amendment, and both substantive and procedural due process.

[3] In its proposed counterclaims, the Municipal Authority alleges that "through its underlying action, Seneca seeks to invalidate the Charter" thereby violating the people's "right of local community self-government," "right to clean air, water, and soil," "right to public control of municipal water supplies," and rights under Pennsylvania's Environmental Rights Amendment.

[4] The Proposed Intervenors opine that the Home Rule Charter recognizes their rights to intervene and to enforce the Charter. Such an opinion does not make Rule 24(a)(1) available to the Proposed Intervenors here as that provision applies only where there is "an unconditional right to intervene" granted "by federal statute." Id. The Home Rule Charter is not the equivalent of a federal statute and therefore intervention as of right under Rule 24(a)(1) need not be considered by this Court.

required that each of the four elements be met separately to intervene as of right. Id. It is the burden of the party seeking intervention to satisfy all four requirements. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005).

In contrast, permissive intervention relies upon the discretion of the Court when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). Important considerations for the Court in making this determination are whether intervention would prejudice a party by delay or otherwise, and whether intervention is necessary to protect rights that are not identical to an existing party. Virgin Islands, 748 F.3d at 524. "The court may consider the same facts and circumstances used to determine whether intervention was appropriate under Rule 24(a) to determine whether the court should use its discretion to permit intervention under Rule 24(b). Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc., 2017 WL 1376298, at *8 (W.D. Pa. Apr. 17, 2017) (internal citations omitted).


**The Previous Litigation**

This case and the current motion closely track a previous action involving Seneca Resources and the Defendants. See Seneca Resources Corp. v. Highland Township, C.A. No. 1:15-cv-00060. There, the Municipal Authority, along with two other proposed intervenors, attempted to intervene in an effort to defend the Township's Community Bill of Rights Ordinance (the "Ordinance"). Unlike the Home Rule Charter at issue in the present case, the disputed Ordinance was passed by the former Board of Supervisors in 2013-2014. The Ordinance prohibited the operation of underground injection control wells to dispose of waste water from oil and gas extraction within the Township.

This Court denied the motion to intervene on the grounds that the proposed intervenors failed to provide clear and convincing evidence to show that the Township and Board did not adequately represent their interests. Later, the Board of Supervisors rescinded the Community Bill of Rights Ordinance and reached a settlement that resulted in the entry of a Stipulation and Consent Decree ("Consent Decree"). The Consent Decree entered into between Seneca Resources and Highland Township and its Board of Supervisors specifically provided that portions of the Community Bill of Rights Ordinance were unconstitutional, unenforceable and invalid. Seneca Resources Corp. v. Highland Township, C.A. No. 1:15-cv-00060: ECF No. 82.

In response, the proposed intervenors appealed the denial of the motion to intervene, the adoption of the Consent Decree, as well as motions for reconsideration of each. The Court of Appeals for the Third Circuit held: 1) the motion to intervene to defend the Ordinance was rendered moot by the Ordinance's repeal; 2) district court did not abuse its discretion in denying the proposed intervenors' motion to reconsider the order denying their motion to intervene to challenge the consent decree; and 3) the proposed intervenors lacked standing to challenge the consent decree. Seneca Resources Corp. v. Township of Highland, 863 F.3d 245 (3d Cir. Jul.17, 2017).

On November 8, 2016, by popular vote, the citizens of Highland Township, adopted the challenged Home Rule Charter pursuant to Pennsylvania's Home Rule Charter and Optional Plans Law, 53 Pa. C.S.A. §290. ECF No. 1-1, page 3. The Charter functions as a local constitution and promises to guarantee and protect a range of rights, including "community and ecosystem rights above the claimed rights of corporations and to prohibit frack wastewater injection wells." ECF No. 34-1, page 1. Additionally, the Home Rule Charter purports to provide

4

the right to self-government in the local community free from interference by the state or federal government. ECF No. 1-1, page 5.

**The Parties and the Proposed Intervenor**

It is essential to understand the structure and powers of the Proposed Intervenor the Municipal Authority as they relate to those of the Defendant Board of Supervisors. The Board of Supervisors consists of three representatives elected by the citizens of Highland Township and acts as the governing body of the Home Rule municipality. ECF No. 1-1, page 3. As stated in the Defendants' Answer, the Board had no part in the adoption of the Home Rule Charter nor does it have the authority to repeal or amend the Charter. ECF No. 15, pages 2-3. Further, the Board acknowledged arguing against the initial adoption of the Home Rule Charter and acknowledges that several portions "appear to be void and unenforceable under current state or federal law." Id.[5] Further, the Board admits to a significant portion of the allegations but further maintains that the Board of Supervisors has no applicable authority to authorize any changes to the Home Rule Charter. Id. Only the Township's citizens have authority to make changes to the Charter.

Proposed Intervenor, the Municipal Authority, is a Pennsylvania municipal authority formed by and operating under the Pennsylvania Municipal Authorities Act, 53 Pa. Cons. Stat. §5601 and is classified as a quasi-governmental body. ECF No. 34-1, pages 11, 20. It is a

---

[5] In their Answer, Defendants admitted: the [Charter] was the result of a referendum on a ballot measure placed before the electorate of Highland Township pursuant to 53 Pa. C.S.A. §2901, et seq.; the ballot measure was adopted, and a Government Study Commission (the "Commission") was formed by individuals selected by ballot in May 2016; that Commission, which was advised by the Community Environmental Legal Defense Fund ("CELDF") – the same group responsible for drafting the [Charter], returned with a recommendation that Highland Township be changed from a Township of the Second-Class to a Home Rule form of government, and that the [Charter] be adopted; and that question was placed on the November 2016 general election ballot, and was adopted by a majority of the voters in Highland Township.
Id.

separate entity of the local government, within Highland Township, and is an independent

agency of the Commonwealth. Under the Pennsylvania Municipal Authorities Act, municipal

authorities generally have the purpose of "acquiring, holding, constructing, financing, improving,

maintaining and operating, owning or leasing, either in the capacity of lessor or lessee, projects"

including "waterworks, water supply works, [and] water distribution systems." 53 Pa. Cons. Stat.

§5607(a). Although the Board of Supervisors is allowed to appoint members to the Municipal

Authority, the Municipal Authority argues that its mission is separate from the Board and argues

that its functions are mandated by the public: "the public approves of the Municipal Authority's

operations…[and entrusts it] to care for the Crystal Spring, and to administer distribution of its

water to the people of James City." ECF No. 34, page 15. The Municipal Authority provides

water to approximately 120 customers in James City, located within Highland Township. Id.

However, unlike the Board which services the entirety of the Township, the Municipal Authority

only services customers located in James City.


**<u>Standing</u>**

At a Case Management Conference held February 17, 2017, this Court specifically

instructed the proposed intervenors to supplement the briefing to address standing and

jurisdiction. The proposed Intervenors have ignored this Court's specific instruction to their own

peril.

Until recently, the Circuit Courts of Appeal were divided on whether an intervenor of

right must meet the requirements of Article III standing, with the Third Circuit following the

majority of its sister courts holding in the negative. <u>King v. Governor of State of New Jersey</u>,

767 F.3d 216, 245-46 (3d Cir. 2014) (explaining split of authority, compiling cases, and holding

that intervenors "need not demonstrate Article III standing in order to intervene"). In June, the Supreme Court resolved this split of authority by adopting the minority view and requiring a litigant to possess Article III standing in order to intervene as of right under Rule 24(a)(2). Town of Chester, New York v. Laroe Estates, Inc., ___ U.S. ___, 137 S.Ct. 1645 (June 5, 2017). Because the briefs in this case were filed before the Supreme Court decision in Town of Chester, the parties have not fully addressed the standing issue.[6]

Because standing is a question of subject matter jurisdiction, if the proposed intervenors do not have standing, the Court does not have jurisdiction and accordingly a motion to intervene fails. See Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) ("standing is a jurisdictional matter."); Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir.1997) (Article III standing is a "threshold jurisdictional requirement" for any case in federal court).

Standing "is a doctrine rooted in the traditional understanding of case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority." Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) quoting Raines v. Byrd, 521 U.S. 811, 818 (1997). A prospective intervenor has standing when it has:

> 1) suffered an "injury in fact;"
>
> 2) that is fairly traceable to the challenged action of the [opposing party]…; and
>
> 3) that is likely to be redressed by a favorable judicial decision.

---

[6] Unfortunately, none of the litigants have supplemented their filings since the Town of Chester decision.

Id. quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The party invoking

federal jurisdiction bears the burden of establishing all of the elements of Article III standing.

Spokeo, 136 S.Ct. at 1547.

In the majority of standing inquiries, the question focuses on the plaintiff and "whether

the person whose standing is challenged is a proper party to request an adjudication of a

particular issue…the emphasis in standing problems is on whether the party invoking federal

court jurisdiction has 'a personal stake in the outcome of the controversy,'" and whether the

dispute touches upon "'the legal relations of parties having adverse legal interests.'" Flast v.

Cohen, 392 U.S. 83, 99-101 (1968) quoting Baker v. Carr, 369 U.S. 1986, 204 (1962) and Aetna

Life Insurance Co. v. Haworth, 300 U.S. 27, 240 (1937). However, the requirement that the

defendant have standing is relevant, especially in public interest matters.[7] See Wittman v.

Personhuballah, ___ U.S. ___, 136 S.Ct. 1732 (May 23, 2016) (Article III standing required for

proposed defendant intervenor to appeal); Hollingsworth v. Perry, ___ U.S. ___, 133 S. Ct. 2652,

2655 (2013)("Although most standing cases consider whether a plaintiff has satisfied the

requirement when filing suit, Article III demands that an 'actual controversy' persist throughout

all stages of litigation."); McConnell v. FEC, 540 U.S. 93, 233 (2003) overruled on other

grounds by Citizens United v. FEC, 558 U.S. 310 (2010); Diamond v. Charles, 476 U.S. 54, 68

(1986) (holding that an intervenor-defendant-appellant could not maintain a suit on his own for

lack of standing: "an intervenor's right to continue a suit in the absence of the party on whose

side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the

requirements of Article III.").

---

[7] Matthew I. Hall, *Standing of Intervenor-Defendants in Public Law Litigation*, 80 Fordham L. Rev. 1539 (2012).

While the question of standing in relation to a defendant is relatively uncommon, it appears that the question most commonly occurs in cases such as <u>Hollingsworth</u> and the present case before the Court – when the original defendant declines or refuses to defend a challenged law and a certain interested party wishes to intervene on behalf of the defendant. Here, the Township and Board have admitted to the majority of the allegations raised by Seneca Resources, including various allegations that numerous sections of the Charter are unconstitutional, invalid and unenforceable. ECF No. 15, pages 1-3. Further, the Township and Board contend that neither had a say in the adoption of the disputed Charter. <u>Id</u>. These original named Defendants do not show any interest in defending the Charter or continuing forward with the case against them. This unwillingness to defend the litigation and seek the enforcement of the Home Rule Charter is readily apparent.[8]

---

[8] In Defendants' Answer and New Matter, Defendants "…acknowledge that §109-110, 401 and 404-11 of the [Charter] are invalid and unenforceable…and that §501 of the [Charter] is unconstitutional," and by the Defendants' affirmative defenses, claiming that both Defendants are improper and, as such, are not properly subject to suit. ECF No. 15, pages 15-16.

Additionally, in Defendants' Response and Opposition to Plaintiff's Motion for Judgment on the Pleadings, Defendants concede that they

> "are constrained to acknowledge that § § 109-110, 401, and 404-411 of the Home Rule Charter are invalid and unenforceable as an impermissible exercise of The Township's legislative authority and or police powers; that § 501 of the Home Rule Charter is unconstitutional; and that § § 103-106 of the Home Rule Charter are unconstitutional, invalid, and unenforceable because they are inextricably intertwined with § § 109-110, 401, 404-400, and 501 of the Home Rule Charter. The Defendants further agree that Seneca Resources Corporation is entitled to relief that is declaratory in nature and with specific regard to those portions of the Home Rule Charter (identified above) that are properly subject to invalidation on the basis of (where appropriate) preemption by state or federal law; and improper exercise of municipal policy or legislative authority or unconstitutional."

ECF No. 32, pages 6-7. <u>See also</u> Transcript , February 17, 2017.

A "generalized grievance, no matter how sincere, is insufficient to confer standing."

Hollingsworth, 133 S.Ct. at 2662. In order to demonstrate a sufficient injury-in-fact[9] to support

standing, a litigant must "claim 'the invasion of a concrete and particularized legally protected

interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" Prince v.

U.S. Government, ___ F.App'x ___, 2017 WL 3867814, at *1 (3d Cir. Sept.5, 2017) quoting

Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014). Concreteness and

particularity are separate requirements. Spokeo, 136 S.Ct. at 1548. ("Concreteness, therefore, is

quite different from particularization."). For an injury to be particular, "it must affect the

[litigant] in a personal and individual way." Id. Meanwhile, a concrete injury "must be 'de facto';

that is it must actually exist." Id. citing Black's Law Dictionary 479 (9th ed. 2009).

Where, as here, the alleged injury is heightened risk of future harm, the allegations must

"entail a degree of risk sufficient to meet the concreteness requirement." Kamal v. J. Crew Grp.,

Inc., 2016 WL 6133827, at *2 (D.N.J. Oct. 20, 2016) quoting Spokeo, 136 S. Ct. at 1550 and

citing Clapper v. Amnesty Int'l USA, ___ U.S. ___, 133 S. Ct. 1138 (2013). See also Alfa

International Seafood v. Ross, ___ F.R.D. ___, 2017 WL 1377914, at *2 (D.C.D.C. April 17,

2017) ("[W]here standing is premised on future injury, the party must demonstrate a realistic

danger of sustaining a direct injury."). In its brief in support of its motion to intervene, the

Municipal Authority contends that allowing Seneca Resources to operate an UIC well and

dispose of waste water in the area close to Crystal Spring "*threatens* [the] water quality and

existence of Crystal Spring…." ECF No. 34-1, page 13 (italics added). Further, the Municipal

Authority argues that "Seneca's proposed injection well *threatens* the very purpose for which the

---

[9] The injury-in-fact inquiry is often determinative. See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009).

Authority exists." Id. (italics added). The alleged injuries are merely speculative and no facts have been offered as to how the Plaintiff's actions cause concrete and particularized injury to the Municipal Authority.

In its separate brief in support of jurisdiction, the Municipal Authority only summarizes its interest broadly: it is the water provider for 120 homes and businesses using Crystal Spring as its water source and that "[t]his water supply is *threatened* by Seneca's proposed injection well, which the Charter prohibits." ECF No. 35, page 12 (italics added). Despite this Court's express instruction to brief the issue of standing, this proposed intervenor has not specifically addressed the injury-in-fact element.[10]

The only evidence produced by the Municipal Authority in support of its motion to intervene generally (and not on the issue of standing[11]) is the sworn Declaration of Susan Swanson, long-time resident of Highland Township and secretary/treasurer of the Municipal Authority ECF No. 34-4. The Declaration provided by Ms. Swanson fails to demonstrate that the Municipal Authority has suffered "the invasion of a concrete and particularized legally protected interest' resulting in harm that is actual or imminent" (Blunt, 767 F.3d at 278) by not being able to defend the Home Rule Charter in this case.

In support of the application for intervention, Ms. Swanson declares:

> 10. The majority of Highland Township's population is in James City. Crystal Spring is the best and only good source of water for James City. […] all we have

---

[10] Indeed, in its Reply Brief, the Municipal Authority argues that Seneca's invocation of an "actual harm" standard is "legally incorrect and impossibly high." ECF No. 39, page 6.

[11] The "sufficient interest" contemplated in Rule 24 is not equivalent to the injury-in-fact element of standing. See generally, In Re Grand Jury, 111 F.3d 1066, 1071 n.8 (3d Cir. 1997) (In a pre-Town of Chester decision, recognizing that parties have been deemed to meet the standard for intervention under Rule 24(a)(2) though they do not necessarily possess the requisite Article III standing, and declining to clarify the relationship between the two inquiries).

is the Crystal Spring. If something happens to that spring we're done-for as a town because we won't have a clean water supply.

11.  The Crystal Spring water has been very clean. We've tested it regularly. It is really good water, so to take the chance of ruining such a plentiful source of good water is criminal to me.

14.  Municipal Authority members attended Township meetings, where we expressed concerns about needing to protect our water. We went to township meetings to try to figure out a way to prevent the installation of injection wells.

18. […] the Municipal Authority believes there are good grounds to defend the people's right to home rule, and good reasons to protect the community and water supply from unwanted harmful activities, like injection wells.

19. When news of the injection well came out, I read a lot about fracking fluids polluting the water in other towns; the Municipal Authority has good reason to be concerned about the same thing happening here. I regularly shared the information that I read with other members of the Municipal Authority. I read about the history of fracking and water pollution, agency reports on water contamination, and earthquakes. I also read about previous violations that Seneca has had at other wells, even within Highland Township.

20. Out of everything that I have learned, the main impression that still stays with me today is that fracking fluids contain harmful chemicals, and it is not in the best interests of James City residents to have fracking fluids near our water system. Any chance of fracking fluids ruining Crystal Spring is reason to say they are not allowed.

21. I learned from old timers that used to live here (now deceased) that there are abandoned water wells that were used by the glass plant that was here in the early 1920-30's. The wells were abandoned when the plant went out of business during the depression. Back then, they didn't plug wells like they do now. We can't find any record of those wells or where they are. I was told there were eighteen water wells the plant used. The point is that there have been wells drilled in this area that we have no records for, and I believe that makes it impossible to predict where fluids in the earth could travel.

22.  We want to protect our water. We should have the right to protect our water, and the right to have a say in deciding about a technology that could contaminate our water.

23. If we lost Crystal Spring as a water source, our town, our homes, wouldn't be worth anything. Even the thought of an injection well may make people hesitant to move here, because of the risk.

24. If we lose our water, it will destroy our community as we know it. The Municipal Authority has the purpose of improving and protecting our water supply and to keep that from happening.

ECF No. 34-4, page 3.[12]

While Ms. Swanson may have "a main impression that…fracking fluids contain harmful chemicals, and it is not in the best interests of James City residents to have fracking fluids near [the] water system [id.]," there has been no evidence provided that suggests that the Municipal Authority will suffer a concrete and particularized injury-in-fact so as to have standing here. The alleged injury is speculative, at best, and because it involves a heightened risk of future harm, the allegations are required to "entail a degree of risk sufficient to meet the concreteness requirement." Kamal, 2016 WL 6133827, at *2.

The Municipal Authority's interests in this case are based solely on its desire to defend the Home Rule Charter which, regardless if it is upheld or struck down, does not directly affect its ability to carry out its statutory or regulatory duties. No evidence has been produced to demonstrate that any claimed future injury is directly traceable to repealing or affirming the Home Rule Charter. Accordingly, CACHE and the Ecosystem have failed to meet their burden to demonstrate standing for purposes of intervention as of right.

Finally, and alternatively, the Municipal Authority has requested that this Court grant it permissive intervention. Because the Municipal Authority has not established standing, this Court will deny its request for permissive intervention.

---

[12] Ms. Swanson's declaration provides no indication where she obtained the information, gives no authority for the information provided or her understanding of it, and fails to give any indication of who or what expert, if any, originally reported the information.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge