# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENECA RESOURCES CORPORATION,<br>    Plaintiff | )<br>)<br>)<br>) | C.A. No. 16-cv-289 Erie |
| v. | )<br>) | |
| HIGHLAND TOWNSHIP, et al.,<br>    Defendants. | )<br>)<br>) | Magistrate Judge Susan Baxter |

## MEMORANDUM OPINION[1]

## Motion to Intervene by CACHE and Crystal Spring Ecosystem

**Introduction**

Plaintiff Seneca Resources Corporation ("Seneca Resources") brought this action to challenge the constitutionality, enforceability, and validity of the Home Rule Charter (the "Charter") in Highland Township. Named as Defendants to this action are: Highland Township and the Township's Board of Supervisors.

Pending before the Court is a motion to intervene filed by Proposed Intervenors, Citizens Advocating a Clean Healthy Environment, Inc. ("CACHE") and the Crystal Spring Ecosystem ("Ecosystem"). ECF No. 11. For the following reasons, the motion to intervene will be denied.

**Relevant Procedural History**

Seneca Resources, a corporation engaged in oil and gas exploration and production, initiated this action on November 30, 2016, challenging the Home Rule Charter[2] which bans

---
[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

1

Seneca Resources' ability to create and operate an injection well within the Township. ECF No. 1, page 1. Seneca Resources has requested that the Court strike the entire Home Rule Charter and temporarily and permanently enjoin Highland Township and the Board of Supervisors (the "Board") from enforcing the Charter. Id.

CACHE and the Ecosystem seek to intervene, pursuant to Fed.R.Civ.P. Rule24(a), and alternatively, Fed.R.Civ.P. 24(b), in order to defend the Charter and bring counterclaims[3] against Seneca Resources. Both Plaintiff and Defendants oppose this motion to intervene.

**Intervention under Federal Rule 24**

Rule 24 provides for intervention as a matter of right and permissive intervention. Fed.R.Civ.P.24 (a) and (b).[4] To qualify for intervention as a matter of right under Rule 24(a)(2), four requirements must be met: 1) the application must be timely, 2) the applicant must have sufficient interest in the lawsuit, 3) the interest must be affected or impaired by the disposition of the lawsuit, and 4) the interest must not be adequately represented by an existing party. United

---

[2] Seneca alleges that the Home Rule Charter is preempted by the federal Safe Drinking Water Act and the state Oil and Gas Act, is an impermissible exercise of police power and legislative authority, and is violative of the Supremacy Clause, the First Amendment, and both substantive and procedural due process.

[3] In its proposed counterclaims, CACHE and the Ecosystem allege that "through its underlying action, Seneca seeks to invalidate the Charter: thereby violating the people's "right to local community self-government, "the right to clean air, water, and soil," "the right to sustainable energy future," and the "right to a stable climate system." Additionally, the Ecosystem alleges that Seneca is violating its "right of nature," and CACHE claims Seneca is violating the people's rights under Pennsylvania's Environmental Rights Amendment. ECF No. 11-1.

[4] The Proposed Intervenors opine that the Home Rule Charter recognizes their rights to intervene and to enforce the Charter. Such an opinion does not make Rule 24(a)(1) available to the Proposed Intervenors here as that provision applies only where there is "an unconditional right to intervene" granted "by federal statute." Id. The Home Rule Charter is not the equivalent of a federal statute and therefore intervention as of right under Rule 24(a)(1) need not be considered by this Court.

2

States v. Territory of the Virgin Islands, 748 F.3d 514, 519 (3d Cir. 2014). Additionally, it is required that each of the four elements be met separately to intervene as of right. Id. It is the burden of the party seeking intervention to satisfy all four requirements. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005).

In contrast, permissive intervention relies upon the discretion of the Court when an applicant "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B). Important considerations for the Court in making this determination are whether intervention would prejudice a party by delay or otherwise, and whether intervention is necessary to protect rights that are not identical to an existing party. Virgin Islands, 748 F.3d at 524. "The court may consider the same facts and circumstances used to determine whether intervention was appropriate under Rule 24(a) to determine whether the court should use its discretion to permit intervention under Rule 24(b). Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc., 2017 WL 1376298, at *8 (W.D. Pa. Apr. 17, 2017) (internal citation omitted).

**The Previous Litigation**

This case and the current motion closely track a previous action involving Seneca Resources and the Defendants. See Seneca Resources Corp. v. Highland Township, C.A. No. 1:15-cv-00060. There, CACHE and the Ecosystem, along with another proposed intervenor, attempted to intervene in an effort to defend the Township's Community Bill of Rights Ordinance (the "Ordinance"). Unlike the Home Rule Charter at issue in the present case, the disputed Ordinance was passed by the former Board of Supervisors in 2013-2014. The

3

Ordinance prohibited the operation of underground injection control wells to dispose of waste water from oil and gas extraction within the Township.

This Court denied the motion to intervene on the grounds that the proposed intervenors failed to provide clear and convincing evidence to show that the Township and Board did not adequately represent their interests. Later, the Board of Supervisors rescinded the Community Bill of Rights Ordinance and reached a settlement that resulted in the entry of a Stipulation and Consent Decree ("Consent Decree"). The Consent Decree entered into between Seneca Resources and Highland Township and its Board of Supervisors specifically provided that portions of the Community Bill of Rights Ordinance were unconstitutional, unenforceable and invalid. Seneca Resources Corp. v. Highland Township, C.A. No. 1:15-cv-00060: ECF No. 82.

In response, the proposed intervenors appealed the denial of the motion to intervene and the adoption of the Consent Decree, as well as motions for reconsideration of each. The Court of Appeals for the Third Circuit held: 1) the motion to intervene to defend the Ordinance was rendered moot by the Ordinance's repeal; 2) district court did not abuse its discretion in denying the proposed intervenors' motion to reconsider the order denying their motion to intervene to challenge the consent decree; and 3) the proposed intervenors lacked standing to challenge the consent decree. Seneca Resources Corp. v. Township of Highland, 863 F.3d 245 (3d Cir. Jul.17, 2017).

On November 8, 2016, by popular vote, the citizens of Highland Township, adopted the challenged Home Rule Charter pursuant to Pennsylvania's Home Rule Charter and Optional Plans Law, 53 Pa. C.S.A. §290. ECF No. 1-1, page 3. The Charter functions as a local constitution and promises to guarantee and protect a range of rights, including "community and ecosystem rights above the claimed rights of corporations and to prohibit frack wastewater

4

injection wells." ECF No. 34-1, page 1. Additionally, the Home Rule Charter purports to provide the right to self-government in the local community free from interference by the state or federal government. ECF No. 1-1, page 5.

**The Proposed Intervenors**

CACHE is a Pennsylvania non-profit corporation that began forming in 2013 and was incorporated in April 2014. It is a public interest group whose mission is to protect and secure the rights of citizens to have clean air and pure water in their communities. Its members are almost entirely Highland Township residents. ECF No. 12, page 13.

Crystal Spring is a natural spring in Highland Township and is connected to the residents of James City through the Highland Township Municipal Authority's water distribution system. The Ecosystem encompasses the spring, as well as the surrounding hillside and riparian forest, soils, and bedrocks, through which water flows to the water source at Crystal Spring itself. In accordance with the Home Rule Charter, the Ecosystem seeks to intervene in this case as a real party in interest. ECF No. 12, page 15.[5]

---

[5] An ecosystem is not an appropriate party under Federal Rule of Civil Procedure 17. See Pa. Gen. Energy Co. v. Grant Township, 658 Fed. Appx. 37 n.2 (3d Cir. 2016) ("We will refer to the Appellants in the plural throughout this opinion, but we are, at best, dubitante, because we are not convinced that the Little Mahoning Watershed is a proper party under Fed. R. Civ. P. 17. […] We do not see, however, how a watershed could be considered a proper party under Rule 17. Under that Rule, in order to be a party to a lawsuit, the purported litigant must have the capacity to sue or be sued. On this point, the rule speaks only in terms of individuals, corporations and others permitted by state law to sue or be sued. *See* Fed. R. Civ. P. 17(b). The plain language of Rule 17 does not permit an ecosystem such as the Little Mahoning Watershed to sue anyone or be sued by anyone, and for that reason alone we have misgivings with the Watershed being listed as a party in this litigation. But, because this particular issue was not pursued on appeal, and given the nonprecedential nature of this opinion, we make no specific holding on the question."); Yamassee Indian Tribe v. Allendale County, 2014 WL 4097926 (D. S.C. 2014) ("Rule 17 provides that an action "must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17. The rule lists who may sue in their own names without joining the

**Standing**

At a Case Management Conference held February 17, 2017, this Court specifically instructed the proposed intervenors to supplement the briefing to address standing and jurisdiction. The proposed Intervenors have ignored this Court's specific instruction to their own peril. Until recently, the Circuit Courts of Appeal were divided on whether a prospective intervenor of right must meet the requirements of Article III standing, with the Third Circuit following the majority of its sister courts holding in the negative. King v. Governor of State of New Jersey, 767 F.3d 216, 245-46 (3d Cir. 2014) (explaining split of authority, compiling cases, and holding that intervenors "need not demonstrate Article III standing in order to intervene"). In June, the Supreme Court resolved this split of authority by adopting the minority view and requiring a litigant to possess Article III standing in order to intervene as of right under Rule 24(a)(2). Town of Chester, New York v. Laroe Estates, Inc., ___ U.S. ___, 137 S.Ct. 1645 (June 5, 2017). Because the briefs in this case were filed before the Supreme Court decision in Town of Chester, the parties have not fully addressed the standing issue.[6]

---

person for whose benefit the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with whom or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute. *Id*. Because Yamassee Indian Tribe does not fall in any of these categories, it is not a proper party to this action. … Because Plaintiff failed to satisfy Fed.R.Civ.P. 17 and the standing requirement, this court lacks subject matter jurisdiction over the purported claims."); Leatherback Sea Turtle v. Nat'l Marine Fisheries Serv., 1999 WL 33594329 (D. Hawai'I 1999)("The court finds the plain language of Rule 17 and the APA do not authorize the turtles to sue. They are clearly neither a "person" as defined in the APA, nor an individual, infant or incompetent person under Rule 17.").

[6] Unfortunately, none of the litigants have supplemented their filings since the Town of Chester decision.

Because standing is a question of subject matter jurisdiction, if the proposed intervenors do not have standing, the Court does not have jurisdiction and accordingly a motion to intervene fails. See Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) ("standing is a jurisdictional matter."); Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir.1997) (Article III standing is a "threshold jurisdictional requirement" for any case in federal court).

Standing "is a doctrine rooted in the traditional understanding of case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority." Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) quoting Raines v. Byrd, 521 U.S. 811, 818 (1997). A prospective intervenor has standing when it has:

> 1) suffered an "injury in fact;"
>
> 2) that is fairly traceable to the challenged action of the [opposing party]…; and
>
> 3) that is likely to be redressed by a favorable judicial decision.

Id. quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The party invoking federal jurisdiction bears the burden of establishing all of the elements of Article III standing. Spokeo, 136 S.Ct. at 1547.

In the majority of standing inquiries, the question focuses on the plaintiff and "whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue…the emphasis in standing problems is on whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,'" and whether the dispute touches upon "'the legal relations of parties having adverse legal interests.'" Flast v. Cohen, 392 U.S. 83, 99-101 (1968) quoting Baker v. Carr, 369 U.S. 1986, 204 (1962) and Aetna

Life Insurance Co. v. Haworth, 300 U.S. 27, 240 (1937). However, the requirement that the defendant have standing is relevant, especially in public interest matters.[7] See Wittman v. Personhuballah, ___ U.S. ___, 136 S.Ct. 1732 (May 23, 2016) (Article III standing required for proposed defendant intervenor to appeal); Hollingsworth v. Perry, ___ U.S. ___, 133 S. Ct. 2652, 2655 (2013)("Although most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, Article III demands that an 'actual controversy' persist throughout all stages of litigation."); McConnell v. FEC, 540 U.S. 93, 233 (2003) overruled on other grounds by Citizens United v. FEC, 558 U.S. 310 (2010); Diamond v. Charles, 476 U.S. 54, 68 (1986) (holding that an intervenor-defendant-appellant could not maintain a suit on his own for lack of standing: "an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Article III.").

While the question of standing in relation to a defendant is relatively uncommon, it appears that the question most commonly occurs in cases such as Hollingsworth and the present case before the Court – when the original defendant declines or refuses to defend a challenged law and a certain interested party wishes to intervene on behalf of the defendant. Here, the Township and Board have admitted to the majority of the allegations raised by Seneca Resources, including various allegations that numerous sections of the Charter are unconstitutional, invalid and unenforceable. ECF No. 15, pages 1-3. Further, the Township and Board contend that neither had a say in the adoption of the disputed Charter. Id. These original named Defendants do not show any interest in defending the Charter or continuing forward with

---

[7] Matthew I. Hall, *Standing of Intervenor-Defendants in Public Law Litigation*, 80 Fordham L. Rev. 1539 (2012).

8

the case against them. This unwillingness to defend the litigation and seek the enforcement of the Home Rule Charter is readily apparent.[8]

A "generalized grievance, no matter how sincere, is insufficient to confer standing." Hollingsworth, 133 S.Ct. at 2662. In order to demonstrate a sufficient injury-in-fact[9] to support standing, a litigant must "claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" Prince v. U.S. Government, ___ F.App'x ___, 2017 WL 3867814, at *1 (3d Cir. Sept.5, 2017) quoting Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014). Concreteness and particularity are separate requirements. Spokeo, 136 S.Ct. at 1548. ("Concreteness, therefore, is quite different from particularization."). For an injury to be particular, "it must affect the [litigant] in a personal and individual way." Id. Meanwhile, a concrete injury "must be 'de facto'; that is it must actually exist." Id. citing Black's Law Dictionary 479 (9th ed. 2009).

---

[8] In Defendants' Answer and New Matter, Defendants "…acknowledge that §109-110, 401 and 404-11 of the [Charter] are invalid and unenforceable…and that §501 of the [Charter] is unconstitutional," and by the Defendants' affirmative defenses, claiming that both Defendants are improper and, as such, are not properly subject to suit. ECF No. 15, pages 15-16.
  Additionally, in Defendants' Response and Opposition to Plaintiff's Motion for Judgment on the Pleadings, Defendants concede that they
> "are constrained to acknowledge that § § 109-110, 401, and 404-411 of the Home Rule Charter are invalid and unenforceable as an impermissible exercise of The Township's legislative authority and or police powers; that § 501 of the Home Rule Charter is unconstitutional; and that § § 103-106 of the Home Rule Charter are unconstitutional, invalid, and unenforceable because they are inextricably intertwined with § § 109-110, 401, 404-400, and 501 of the Home Rule Charter. The Defendants further agree that Seneca Resources Corporation is entitled to relief that is declaratory in nature and with specific regard to those portions of the Home Rule Charter (identified above) that are properly subject to invalidation on the basis of (where appropriate) preemption by state or federal law; and improper exercise of municipal policy or legislative authority or unconstitutional."

ECF No. 32, pages 6-7. See also Transcript, February 17, 2017.

[9] The injury-in-fact inquiry is often determinative. See Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009).

Where, as here, the alleged injury is heightened risk of future harm, the allegations must "entail a degree of risk sufficient to meet the concreteness requirement." Kamal v. J. Crew Grp., Inc., 2016 WL 6133827, at *2 (D.N.J. Oct. 20, 2016) quoting Spokeo, 136 S. Ct. at 1550 and citing Clapper v. Amnesty Int'l USA, ___ U.S. ___, 133 S. Ct. 1138 (2013). See also Alfa International Seafood v. Ross, ___ F.R.D. ___, 2017 WL 1377914, at *2 (D.C.D.C. April 17, 2017) ("[W]here standing is premised on future injury, the party must demonstrate a realistic danger of sustaining a direct injury.").

In its brief in support of its motion to intervene, these proposed intervenors focus only on their interests rather than any injury-in-fact. The "sufficient interest" contemplated in Rule 24 is not equivalent to the injury-in-fact element of standing. See generally, In Re Grand Jury, 111 F.3d 1066, 1071 n.8 (3d Cir. 1997) (In a pre-Town of Chester decision, recognizing that parties have been deemed to meet the standard for intervention under Rule 24(a)(2) though they do not necessarily possess the requisite Article III standing, and declining to clarify the relationship between the two inquiries). In their separate brief in support of jurisdiction, CACHE and the Ecosystem only summarize their interests broadly: "CACHE is a community group with members who are residents of Highland Township, some of whom own property in Highland Township and in close proximity to Seneca's proposed injection well" and "Crystal Spring Ecosystem is an ecosystem within Highland Township, which has rights recognized by the Charter and threatened by Seneca's proposed injection well." ECF No. 35, page 12. Despite this Court's express instruction to brief the issue of standing, these proposed intervenors have failed to address the injury-in-fact element.

The only evidence produced by CACHE and the Ecosystem in support of their motion to intervene generally are the sworn Declarations of Marsha Buhl and John Castano, long-time

residents of Highland Township. These Declarations fail to demonstrate that CACHE and the Ecosystem have suffered "the invasion of a concrete and particularized legally protected interest' resulting in harm that is actual or imminent" (Blunt, 767 F.3d at 278) by not being able to defend the Home Rule Charter in this case.

Marsha Buhl declares:

> 5. I left Bradford [my previous home] after an oil company ruined the water supply at my house. After the company fracked two wells less than one-half mile from my house, the water started to come out black and smell like sulfur.
>
> 6. Despite the water coming out of the tap black, smelling like sulfur, and stinking to high heaven, the oil company and government claimed the water was still drinkable.
>
> 11. So I began reading, and reading, about this stuff. I have read, for example, that for injection wells, "one well integrity violation was issued for every six deep injection wells examined," that many "wells showed signs that their walls were leaking," and that "wells are frequently operated in violation of safety regulations and under conditions that greatly increase the risk of fluid leakage and the threat of water contamination." Abrahm Lustgarten, *Injection Wells: The Poison Beneath Us*, ProPublica (June 21, 2012), www.propublica.org/article/injection-wells-the-poison-beneath-us.
>
> 12. That article went on to say: "some experts see the well failures and leaks discovered so far as signs of broader problems, raising concerns about how much pollution may be leaking out undetected. By the time the damage is discovered, they say, it could be irreversible."
>
> 34. In addition to the severe consequences if Crystal Spring is contaminated, there is the threat of spills, run-off, above and underground leakage. An injection well would also bring more heavy trucks with threats of accidents, industrial noise, and air pollution to our quiet community. If there's a truck accident, the truck could roll over and spill what it's hauling.
>
> 35. There is also serious concern of an injection well's impact to the wildlife and forest. If we have a leakage, or a water spill on top, and it migrates, the animals eat the grass, the leaves, the snow, and so if there's a spill they're eating that pollution. They also breathe in any pollution. If we hurt one part of the ecosystem, sooner or later it ends up affecting the other parts of it, too.
>
> 38. […] we need to protect our health and our future […]

> 39. […] we have to protect the Charter, so that we can protect our future...
> […]

ECF No. 12-1, pages 1-4. John Castano, another long-time resident of Highland Township, declares:

> 10. Seneca's plans to inject waste from oil and gas activities into an injection well in Highland Township pose serious risks. The injection of waste threatens the Crystal Spring and my household and drinking water. It threatens the water relied on by my neighbors and will have a negative impact on plants and animals.
>
> 15. there have been many instances of contaminated sites in the past, many of them recent, all attributed to human endeavors of disregard of any respect [sic] to the environment.
>
> 17. Highland Township is a small community of residents who dwell here for many reasons but the one that is common to most if not all is the beauty ad healthy of the surrounding environment. Eliminate that ecosystem and it becomes just another bunch of houses in the hinterlands of Pennsylvania. At present, the ecosystem of the township will be the envy of many other locations. How the residents of southern California would like to be able to relay on an ample, clean water supply not to mention the myriad other water starved areas of the globe. Truly we are blessed. Seneca Resources threatens that state of blessedness.

ECF No. 12-3, pages 1-3.

Nothing in either of these sworn Declarations provides evidence that these proposed Intervenors have suffered or will suffer a concrete and particularized injury-in-fact so as to have standing here. The alleged injury is speculative, at best, and because it involves a heightened risk of future harm, the allegations are required to "entail a degree of risk sufficient to meet the concreteness requirement." Kamal, 2016 WL 6133827, at *2.

CACHE and the Ecosystem's interests in this case are based solely on their desire to defend the Home Rule Charter. No evidence has been produced to demonstrate that any claimed future injury is directly traceable to repealing or affirming the Home Rule Charter. Accordingly, CACHE and the Ecosystem have failed to meet their burden to demonstrate standing for purposes of intervention as of right.

Finally, and alternatively, these proposed Intervenors have requested that this Court grant them permissive intervention. Because CACHE and the Ecosystem have not established standing, this Court will deny their request for permissive intervention.

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge