**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **SENECA RESOURCES** | ) | **C.A. No. 16-cv-289 Erie** |
| **CORPORATION,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Susan Baxter** |
| | ) | |
| **HIGHLAND TOWNSHIP, et al.,** | ) | |
| **Defendants.** | ) | |


**MEMORANDUM OPINION[1]
Plaintiff's Motion for Judgment on the Pleadings**

## I. Introduction

Plaintiff Seneca Resources Corporation ("Seneca Resources") brought this action to challenge the constitutionality, enforceability, and validity of the Home Rule Charter (the "Charter") in Highland Township. Named as Defendants to this action are: Highland Township and the Township's Board of Supervisors.

Pending before the Court is Plaintiff's motion for judgment on the pleadings. ECF No. 26. For the following reasons, the motion will be GRANTED IN PART AND DENIED IN PART.


## II. Relevant Procedural History

Seneca Resources is a Pennsylvania corporation engaged in oil and natural gas exploration and production in various locations within the Commonwealth of Pennsylvania,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment.

including Highland Township in Elk County. In January of 2014, Seneca Resources received a permit from the United States Environmental Protection Agency to convert an existing natural gas well into an underground injection control well (UIC). The company began work soon thereafter on securing a permit from the Pennsylvania Department of Environmental Protection. An application was submitted to the DEP in November of 2014.

While Seneca Resources was engaged in the permitting process, Highland Township adopted an ordinance which, among other things, made it unlawful for corporations to deposit, store, treat, inject or process waste water, "produced" water, "frack" water, brine or other materials, chemicals or by-products that have been used in the extraction of shale gas onto or into the land, air, or waters within Highland Township. This prohibition specifically applied to UICs. Ordinance 1-9 of 2014, § 4(a). In January of 2015, Township supervisors notified the state DEP of the Township's position that the federal EPA permit was invalid as a result of this ordinance and that any permit the DEP issued would be equally unfounded. For its part, Seneca Resources notified the DEP of its contention that the ordinance was unconstitutional and invalid under federal and state law. The DEP, however, suspended its review of Seneca's application[2] and, to date, has not issued a permit to Seneca Resources.

_____

[2] By letter dated August 12, 2015, the Pennsylvania DEP informed Seneca:

> This letter is to inform you that the Department has suspended its review of your permit application … [A] conflict between this project and an ordinance adopted by Highland Township entitled Community Bill of Rights Ordinance (Highland Township Ordinance) has been brought to our attention. … The Department is aware that you are disputing the validity of this local ordinance in the United States District Court for the Western District of Pennsylvania (Dkt. No. 1:15-60). The Department also recognizes that there is a serious question regarding the constitutional validity of the Highland Township Ordinance, and that a similar local ordinance enacted by Blaine Township was determined to be invalid … However, as part of its permit application review, the Department has an obligation to consider applicable local ordinances related to environmental protection and the Commonwealth's public natural resources. In the event

2

Seneca Township challenged the Ordinance in February of 2015 in this Court. See Seneca Resources Corp. v. Highland Township, Elk County, Pennsylvania, C.A. No. 15-60Erie. The parties reached a settlement and this Court entered a Stipulation and Consent Decree. The parties stipulated that the Ordinance was unconstitutional and unenforceable. In August of 2016, this Court adopted the findings of the consent decree, adjudging the Ordinance to be unconstitutional, invalid, and unenforceable. That was not the end of the matter, however.

By referendum vote in November of 2016, Highland Township adopted a Home Rule Charter which, among other things, enshrined the provisions of the Ordinance previously invalidated by this Court. Section 401 of the Home Rule Charter prohibits any corporation from engaging in the depositing of waste water from oil and gas extraction within the Township. Further, Section 404 of the Charter provides that "No permit, license, privilege, charter, or other authorization, issued by any state or federal entity, that would enable any corporation or person to violate the rights or prohibitions of this Charter, shall be lawful within Highland Township." Other sections of the Charter provide for fines for any violations of its provisions and create standing for entities such as ecosystems and "natural communities." Section 410 of the Charter

---

of a conflict between a permit application and a local ordinance the department may suspend its review of the application until the conflict has been resolved.
As a result of the conflict between your application and the Highland Township Ordinance, and the potential for legal action against Department employees being brought pursuant to this local ordinance, the Department has decided to suspend its review of your permit application pending a court decision concerning the validity of the Highland Township Ordinance. The Department will take a final action regarding issuance of the permit once a court ruling has been rendered determining the validity of the local ordinance.

ECF No. 1-3, page 1.

declares that Highland Township will only recognize a federal or state law to the extent it does not violate the rights and prohibitions outlined in the Charter.[3]

Seneca Resources initiated this action on November 30, 2016, challenging the Township's Home Rule Charter which directly precludes its ability to create and operate an injection well within the Township. Seneca Resources has moved to invalidate the entire Home Rule Charter, and to both temporarily and permanently enjoin Highland Township and the Board of Supervisors (the "Board") from enforcing the Charter. More specifically, the company alleges that the Home Rule Charter is preempted by the federal Safe Drinking Water Act; the Pennsylvania Oil and Gas Act; and is an impermissible exercise of police power and legislative authority. Seneca Resources also alleges that the Charter offends the Constitution's Supremacy Clause and the First Amendment, as well as violates the company's rights to both substantive and procedural due process. As relief, Plaintiff seeks a declaratory judgment, *inter alia*, that the Home Rule Charter as a whole is a) preempted by federal and state law; b) is an impermissible exercise of police power by the Township; c) is a violation of the Supremacy Clause; d0) constitutes illegal exclusionary zoning; e) constitutes an impermissible exercise of legislative authority; f) is a violation of Seneca's First Amendment rights; and g) is a violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. ECF No. 1, pages 22-23.

The Township Defendants filed an Answer to the Complaint wherein they admitted the majority of Seneca Resource's claims, including the unconstitutionality and unenforceability of the Charter. Specifically, Defendants acknowledged that they

> "are constrained to acknowledge that §§109-110, 401, and 404-411of the HRC are invalid and unenforceable as an impermissible exercise of the Township's legislative authority and/or police powers, and that §501 of the HRC is

---

[3] A copy of the Township's Proposed Home Rule Charter, which was attached to the complaint, is attached to this Memorandum Opinion as Addendum 1.

unconstitutional. The Defendants further respectfully requests that this Honorable court limit any relief afforded to Seneca Resources Corporation to relief that is declaratory in nature and with specific regard to those portions of the Home Rule Charter (identified above) that are properly subject to invalidation on the basis of (where appropriate) preemption by state or federal law; an improper exercise of municipal police or legislative authority; or unconstitutionality, and that it award Seneca no damages, costs, or counsel fees as against Highland Township, Elk County, Pennsylvania and the Highland Township Board of Supervisors, Elk County, Pennsylvania."

ECF No. 15, page 15.

Given these admissions, Seneca has moved for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Seneca moves for judgment on the pleadings at all nine counts of the Complaint claiming the Home Rule Charter in its entirety is invalid, unenforceable, or unconstitutional. However, the motion's "Wherefore clause" requests that this Court enter judgment only on § § 103-106, 109-110, 401, 404-411, and 501 of the Home Rule Charter. ECF No. 26.

The Township Defendants submitted a short responsive filing to this motion wherein they concurred[4] with Plaintiff that the Charter is unconstitutional, preempted, and unenforceable. ECF No. 31; ECF No. 32. They concurred in Seneca Resources request for a judgment on the pleadings in favor of the corporation on certain specific provisions of the Home Rule Charter.[5]

---

[4] Defendants concur: "WHEREFORE, the Defendants, Highland Township, Elk County, Pennsylvania and the Highland Township Board of Supervisors, Elk County, Pennsylvania, are constrained to acknowledge that §§109-110, 401, and 404-411 of the HRC are invalid and unenforceable as an impermissible exercise of the Township's legislative authority and/or police powers; that §501 of the HRC is unconstitutional; and that §§103-106 of the HRC are unconstitutional, invalid, and unenforceable because they are inextricably intertwined with §§109-110, 401, 404-411, and 501 of the HRC. The Defendants further agree that Seneca Resources Corporation is entitled to relief that is declaratory in nature and with specific regard to those portions of the Home Rule Charter (identified above) that are properly subject to invalidation on the basis of (where appropriate) preemption by state or federal law; an improper exercise of municipal police or legislative authority; or unconstitutionality." ECF No. 31.

### III. Standard of Review for Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when the movant "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). Turbe v. Government of the Virgin Islands, 938 F.2d 427, 427 (3d Cir. 1991). The Court is therefore required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007).

Here, as noted above, the Township Defendants do not oppose the motion. In some situations, courts have granted such motions without discussion or analysis. See, e.g., Spann v. Midland Credit Management and Midland Funding, LLC, 2016 WL 5390671 at *4 (E.D. Pa. Sep. 27, 2016). However, the Court of Appeals for the Third Circuit has instructed that a court is nevertheless required to address a defendant's motion for judgment on the pleadings on the merits even if it is unopposed by a plaintiff. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 174 (3d Cir. 1990). This Court could not locate precedent for situations such as this case where a *plaintiff* has filed

---

[5] The Township Defendants also argue that the Township Board of Supervisors is not a proper defendant to this action as the Board of Supervisors is not a legally recognized entity separate and apart from the Township itself and that any judgment against such an entity would be improper. ECF No. 32. Seneca Resources has not responded to this argument.

the motion and *defendants* do not oppose, and indeed, actively concur in the plaintiff's motion. Therefore, out an abundance of caution, the Court will review the merits of the motion.

## IV. Analysis of Plaintiff's Claims

### A. Count I – Preemption by the Safe Drinking Water Act

At Count I, Seneca Resources alleges that the Home Rule Charter is preempted by the federal Safe Drinking Water Act, 42 U.S.C. § 300f et seq. (SDWA). More specifically, the corporation contends that § 401 of the Township's Charter presents a clear obstacle to the congressional purpose and procedures embodied in the Act. ECF No. 1, ¶ ¶ 48-54.

"Preemption is a corollary of the Supremacy Clause of the United States Constitution, and in general, provides that any municipal or state law that is inconsistent with federal law is without effect." King Cty. v. City of Sammamish, 2017 WL 3424972, at *2 (W.D. Wash. Aug. 8, 2017). Seneca Resources alleges that § 401 of the Township's Charter is preempted by federal law. Further, the Township's Answer to the Complaint, and its response to the motion for judgment on the pleadings admit that § 401 of the Charter is preempted by the Constitution as well as federal and state laws. The Third Circuit recently provided important and relevant background on the preemption doctrine:

> The doctrine of preemption is a necessary but precarious component of our system of federalism under which the states and the federal government possess concurrent sovereignty, subject to the limitation that federal law is "the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Consistent with this principle, Congress has the power to enact legislation that preempts state law. At the same time, with due respect to our constitutional scheme built upon a "compound republic," with power allocated between "two distinct governments," there is a strong presumption against preemption in areas of the law that States have traditionally occupied. For that reason, all preemption cases "start with the assumption that the

7

> historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Congressional intent is the "ultimate touchstone" of a preemption analysis. Thus, when confronted with the question of whether state claims are preempted, as we are here, we look to the language, structure, and purpose of the relevant statutory and regulatory scheme to develop a "reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law."

Sikkelee v. Precision Airmotive Corp., 822 F.3d 680, 687 (3d Cir. 2016) (internal citations omitted). Seneca Resources argues that the Township's Charter is subject to conflict preemption. There are two types of conflict preemption: (1) where "compliance with both federal and state duties is simply impossible," and (2) where "compliance with both laws is possible, yet state law poses an obstacle to the full achievement of federal purposes." MD Mall Assocs. v. CSX Transp., Inc., 715 F.3d 479, 495 (3d Cir. 2013). Seneca Resources relies on "obstacle" conflict preemption. Thus, the Court will examine § 401 in order to determine whether it poses an obstacle to achieving Congress's goals under various federal statutes and, more broadly, the Constitution itself.

The federal SDWA, 42 U.S.C. § 300f et seq. applies to "each public water system in each State," 42 U.S.C. § 300g, sets out a comprehensive regime to protect America's drinking water, and authorizes the federal EPA to set standards for drinking water contaminants therein. 42 U.S.C. § 300g-1; see also Wyoming et al. v. Zinke, ___ F.3d. ___, 2017 WL 4173619 (10th Cir. 2017). In particular, it protects "public water systems" and underground water sources. See 42 U.S.C. §§ 300g et seq., 300h et seq. (respectively).

Among other things, the SDWA establishes a national program ("the UIC program") for regulating injection wells in order to protect underground sources of drinking water. See 42 U.S.C. §§ 300g, 300h. In order to protect underground sources of drinking water, the SDWA

authorizes EPA to issue regulations establishing standards for UIC programs, and allows each

state to seek approval to administer its own UIC program based on those federal requirements.

See 42 U.S.C. §§ 300h(a), 300h−1(b); EQT Production Co. v. Wender, ___ F.3d ___, 2017 WL

3722448 (4th Cir. Aug. 30, 2017).  Part C of the SDWA requires that the Administrator of the

United States Environmental Protection Agency establish underground injection control

regulations in order to protect underground sources of drinking water from contamination by

underground injection of wastes. 42 U.S.C. § 300h-1(a), (d).  As has been explained,

> The goals of the SDWA are achieved through cooperative
> federalism. The Environmental Protection Agency (EPA) sets
> national minimum standards, but the States implement those
> standards. *See id.* §§ 300f(7)-(8), 300g−2 (providing for State
> regulation satisfying a national standard). Section 300h−300h−8 of
> the SDWA (also called Part C) describes the underground injection
> program. As set forth in the SDWA, the EPA cannot directly
> regulate underground injections; it can only recommend that a
> State do so. *Id.* § 300h−1(a). States may regulate underground
> injections of any substance, including garbage and waste. *See* H.R.
> 93−1185 (1974). In 2005, Congress excluded non-diesel fracking
> from the definition of "underground injection." Energy Policy Act
> of 2005, 109 P.L. 58, 119 Stat. 594 (2005) (codified at 42 U.S.C. §
> 300h(d)(1)(B)(ii)). This amendment to the SDWA came after a
> ruling of the Eleventh Circuit, which held that the EPA had
> authority to regulate fracking under the statute as then written. *See
> Legal Envtl. Assistance Found. (LEAF), Inc. v. EPA*, 118 F.3d
> 1467, 1470 (11th Cir. 1997).

Wyoming, 2017 WL 4173619, at *3.  Section 401 of the Charter states that "it shall be unlawful

within Highland Township for any corporation or government to engage in the depositing of

waste from oil and gas extraction."  This provision creates a direct obstacle to Congress'

intentions to create a cooperative system, based on principles of federalism, to regulate and

protect drinking water and any underground processes which might endanger that resource.  The

Court notes, for example, that § 300h(a)(1) of the SDWA directs the Administrator of the federal

EPA to promulgate regulations which set out minimum requirements for state underground

injection control (UIC) programs.  See E.O.R. Energy L.L.C., et al. v. Messina, Director of Illinois Environmental Protection Agency, 2017 WL 4181346 (C.D. Il. Sept. 19, 2017).  By prohibiting the deposit of waste from oil and gas extraction in the Township, § 401 of the Township's Charter creates a clear obstacle to the Congressional objectives and procedures as embodied in the SDWA.  As such, that provision is preempted by federal law.  The Charter interferes, impedes, and opposes Congress' goals.  Consequently, the Commission lacks the power to legislate in conflict with the state in this area. Section 401 of the Charter stands as an obstacle to federal law, and hence is void. The motion for judgment on the pleadings will be granted in this regard.

### B.  Count II – Preemption by Pennsylvania Oil and Gas Act

Plaintiff alleges that the Home Rule Charter's prohibition on brine disposal (referencing § 401) within the Township is expressly preempted by § 3302 of the Pennsylvania Oil and Gas Act, otherwise known as Act 13. Plaintiff claims that this provision of the Home Rule Charter is preempted by Act 13 which exclusively and comprehensively regulates the development of oil and gas within this Commonwealth. Plaintiff alleges that by the statute's terms, 55 Pa.C.S. § 3302 expressly "supersedes" all local ordinances "purporting to regulate oil and gas operations" related to development unless those ordinances are adopted pursuant to the Flood Plain Management Act or the Municipalities Planning Code. ECF No. 1, ¶¶ 56-66.[6]

---

[6] In its brief in support of its motion for judgment on the pleadings, Plaintiff expands its argument on preemption by Act 13 to include a challenge to § 404 of the Home Rule Charter. ECF No. 27, page 16. Because the present dispositive motion is a motion for judgment on the pleadings, and neither the text of § 404 nor any reference to § 404 appears in the Complaint, the Court will limit its review to the complaint and the answer only.

Act 13 has been characterized by the courts of this Commonwealth as "the first significant overhaul of state statutes governing oil and gas drilling in thirty years, constitut[ing] a 'land use revolution respecting oil and gas operations' within this Commonwealth." Robinson Township v. Commonwealth, ("Robinson IV"), 147 A.3d 536, 559 (Supreme Court of Pennsylvania 2016) quoting Robinson Township v. Commonwealth, ("Robinson II"), 83 A.3d 901, 974 (Supreme Court of Pennsylvania 2013). Act 13 has been the subject of intense litigation, so much so that many of its provisions have been ruled unconstitutional. Id.

Plaintiff alleges that the Home Rule Charter is expressly preempted by a provision of Act 13 that remains in effect. The relevant portion of § 3302 provides: "Except with respect to local ordinances adopted pursuant to the Municipalities Planning Code ["MPC"] and the act of Ocotber 4, 1978 known as the Flood Plain Management Act, all local ordinances purporting to regulate oil and gas operations regulated by Chapter 32 (relating to development) are hereby superseded." 58 Pa.C.S. § 3302.

The preemption doctrine establishes priority between potentially conflicting laws enacted by various levels of government. Huntley & Huntley v. Borough Counsel of Borough of Oakmont, 964 A.2d 855, 862-63 (Pa. 2009). Local legislation cannot permit that which a state statute forbids or prohibit that which state enactments allow. Id. citing Liverpool Township v. Stephens, 900 A.2d 1030 (Pa. Cmmw. Ct. 2006). See also Range Resources-Appalachia, LLC v. Salem Township, 600 Pa. 231 n.7 (2009) (finding a direct conflict between state law and a local ordinance where the ordinance forbade what the state law allowed).

Here, the plain terms of Act 13 indicate that a local ordinance purporting to regulate oil and gas operations must be adopted pursuant to the MPC and the Flood Plain Management Act. Seneca alleges that the adoption of the Home Rule Charter was not in compliance with either the

MPC or the Flood Plain Management Act [ECF No. 1, ¶ 63] and Defendants do not deny this allegation.

Accordingly, Plaintiff is entitled to judgment on the pleadings on this claim as the Home Rule Charter violates § 3302 of the Oil and Gas Act and is therefore preempted.

### C. Counts III and VI – Impermissible Use of Police and Legislative Powers

"A municipality is a creature of the state and thus necessarily subordinate to its creator, and can exercise only such power as may be granted to it by the legislature." Twp. of Lyndhurst, New Jersey v. Priceline.com, 657 F.3d 148, 156 (3d Cir. 2011). Consequently, municipal corporations "possess only such powers of government as are expressly granted to [them] and as are necessary to carry the same into effect." Appeal of Gagliardi, 163 A.2d 418, 419 (Pa. 1960). The Township's "ability to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." City of Philadelphia v. Schweiker, 579 Pa. 591, 605 (2004).

When analyzing a home rule township's "exercise of power ... [courts] begin with the view that it is valid absent a limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and [courts] resolve ambiguities in favor of the municipality." Nutter v. Dougherty, 595 Pa. 340, 357 (2007) (citations omitted). See also 53 Pa. Cons. Stat. Ann. § 2961 ("All grants of municipal power to municipalities governed by a home rule charter under this subchapter ... shall be liberally construed in favor of the municipality.").

Plaintiff alleges that portions of Highland Township's Charter were enacted beyond the authority granted to a township by the Pennsylvania Home Rule Charter and Optional Plans

Law. At Count III, Seneca alleges that Highland Township acted beyond the scope of its **police** power because:

> The Home Rule Charter is unduly oppressive, arbitrarily interferes with private business, and imposes unnecessary restrictions upon lawful business activities based on the mere allegation and speculation that all disposal and storage of brine adversely affects the health, safety, and welfare of the residents of the Township.

ECF No. 1, ¶ 73. Plaintiff does not identify any specific provision of the Home Rule Charter at this claim. This Court construes this claim as attacking the Home Rule Charter in its entirety.

As to Count VI, Seneca alleges that the Home Rule Charter is an illegal exercise of **legislative** authority in that:

> The Home Rule Charter purports to regulate the location of uses within the Township and is, therefore, a zoning ordinance.

> The Home Rule Charter's provisions attempting to create municipal zoning and land use regulation violates the limitations of the MPC.

Id. at ¶ ¶ 93, 98. Although not specified, presumably this is a challenge to § 401 of the Home Rule Charter.

Plaintiff's brief discusses both of these claims together and the Home Rule Charter as a whole, but then shifts its focus to §§ 406-408. In this regard, Plaintiff's moving papers are both too broad (in that there are not sufficient allegations and arguments for this Court to determine that the entire Home Rule Charter was enacted beyond the authority granted to a township by the Pennsylvania Home Rule Charter and Optional Plans Law) and too narrow (in that no challenges to §§ 406-408 are alleged or referenced in the Complaint).

As to Count VI, § 401 of the Home Rule Charter is an illegal exercise of legislative authority as the Home Rule Charter and Optional Plan Act does not authorize a home rule community to engage in zoning decisions. See 53 Pa.Con.Stat. § 2962(a)(10); Delaware County

v. Middletown Township, 511 A.2d 811 (Pennsylvania Supreme Court 1986).  By prohibiting a legitimate use within its borders, Highland Township has exceeded its authority.

Accordingly, the motion for judgment on the pleadings is denied as to Count III and granted as to Count VI.


### D.  Count IV – The Supremacy Clause Challenge

Plaintiff claims that § 501 of the Home Rule Charter violates the Supremacy Clause because it purports to divest corporations of virtually all of their constitutional rights.  ECF No. 1, ¶¶ 79-84.

In Armstrong v. Exceptional Child Ctr., Inc., the Supreme Court held that "[T]he Supremacy Clause . . . does not create a cause of action," is not the "source of any federal rights," but instead "instructs courts what to do when state and federal law clash." ___ U.S. ___, ___, 135 S.Ct. 1378, 1383 (2015). The Armstrong Court further explained, "If the Supremacy Clause includes a private right of action, then the Constitution requires Congress to permit the enforcement of its laws by private actors, significantly curtailing its ability to guide the implementation of federal law . . . a limitation unheard-of with regard to state legislatures." Id. at ___, 1384.  Therefore, since Plaintiff is a private actor, Plaintiff cannot seek to enforce or otherwise bring a cause of action under the Supremacy Clause. See Davis v. Shah, 821 F.3d 231, 246 (2d Cir. 2016) (holding that Armstrong forecloses plaintiff's claim of a private right of action under the Supremacy Clause).  See also Alliance v. Alt. Holistic Healing, LLC, 2016 WL 223815, at *2 (D. Colo. 2016) (agreeing that there is no private right of action under the Supremacy Clause and explaining that parties cannot use it as a basis for equitable relief); Tohono O'odham Nation v. Ducey, 130 F.Supp.3d 1301, 1315 (D.Ariz. 2015) (explaining that

the Tohono O'odham Indian Nation cannot seek relief under the Supremacy Clause since no private cause of action exists); Mercer County Children's Medical Daycare, LLC v. O'Dowd, 2015 WL 5335590, at * 2 (D.N.J. 2015) ("The Supreme Court's analysis of the Supremacy Clause [in Armstrong] appears standalone, not tied to or in any way affected by its analysis of § 30(A).").

Accordingly, Plaintiff's motion for judgment on the pleadings will be denied and Count IV will be dismissed.


### E. Count V – Exclusionary Zoning

Plaintiff alleges that the Home Rule Charter's prohibition on the storage and disposal of brine anywhere in the Township (again, referencing § 401) violates Pennsylvania law which requires that a municipality authorize all legitimate uses somewhere within its boundaries. ECF No. 1, ¶¶ 86-90.

It is true that Pennsylvania law requires that a municipality authorize all legitimate uses somewhere within its boundaries. Beaver Gasoline Co. v. Osborne Borough, 285 A.2d 501, 503-04 (Pa. 1971) ("The constitutionality of a zoning ordinance which totally prohibits legitimate uses or fails to provide for such uses anywhere within the municipality should be regarded with particular circumspection."). Although an ordinance is presumed valid, the presumption disappears when an ordinance is *de jure* exclusionary. Id. at 504-05; Tri-County Landfill v. Pine Twp. Zoning Hearing Bd., 83 A.3d 488, 518 (Pa. Cmmw. Ct. 2014). A *de jure* exclusion exists where an ordinance, on its face, completely or effectively bans a legitimate use. Tri-County Landfill, 83 A.3d at 518. Upon a showing that an ordinance is *de jure* exclusionary, the burden shifts to the municipality to show that the "exclusionary regulation bears a substantial

relationship to the public health, safety, morality, or welfare." <u>Twp. of Exeter v. Zoning Hearing Bd.</u>, 962 A.2d 653, 661 (Pa. 2009).

Here, § 401 of the Home Rule Charter proclaims that "it shall be unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction," despite the fact that the development of oil and gas (which necessarily includes the management of waste materials generated at a well site) is a legitimate business activity and land use within Pennsylvania. <u>See</u> <u>generally</u> Oil & Gas Act, 58 Pa.C.S. § 3301. Because § 401, on its face, completely bans a legitimate use, it is *de jure* exclusionary. *De jure* exclusionary ordinances can only be justified by a "substantial relationship" to public health, safety, or welfare. <u>Township of Exeter v. Zoning Hearing Bd.</u>, 599 Pa. 568, 579-80 (Supreme Court of Pennsylvania 2009) ("a zoning ordinance which totally excludes a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality."). Because no such relationship has been shown here by Defendants, the motion succeeds. It is not the Court's burden to assume or substantiate a connection to public health, safety, morals, and general welfare.

Judgment will be granted in favor of Plaintiff on Count V.


**F.  Count VII -- The Petition Clause Challenge**

At Count VII, Plaintiff alleges that § 501 of the Home Rule Charter suppresses Seneca Resources' right to make a complaint to, or seek the assistance of, the government for the redress of grievances in violation of Seneca Resources' First Amendment right to do so. ECF No. 1, ¶ ¶ 101-105. The Home Rule Charter purports to divest corporations, such as Seneca, of their

constitutional right to petition the government for redress of grievances in that it strips

corporations of: 1) their status as "persons" under the law; 2) their right to assert state or federal

preemptive laws in an attempt to overturn the Home Rule Charter; and 3) their power to assert

that the Township lacks the authority to adopt the Home Rule Charter. Id. at ¶ 103.

The First Amendment protects "the right of the people ... to petition the Government for a

redress of grievances." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 382 (2011). The

threshold question in a right-to-petition case ... is ... whether the plaintiff's conduct deserves

constitutional protection." EJS Properties, LLC v. City of Toledo, 698 F.3d 845, 863 (6th Cir.

2012) quoting Holzemer v. City of Memphis, 621 F.3d 512, 520 (6th Cir. 2010). The petition

clause protects a citizen's right of access to governmental mechanisms for the redress of

grievances, including the right of access to the courts for that purpose. See Bieregu v. Reno, 59

F.3d 1445, 1453 (3d Cir. 1995); Citizens United v. Federal Election Comm'n, 558 U.S. 310, 342

(2010) ("… First Amendment protection extends to corporations.").

The Home Rule Charter's § 501 provides that:

> Corporations that violate this Charter or the laws of the Township, or that seek to
> violate this Charter or those laws, shall not be deemed to be "persons" … nor
> shall they possess any other legal rights, powers, privileges, immunities, or duties
> that would infringe the rights or prohibitions enumerated by this Charter or those
> laws, including the power to assert that Highland Township, or the people of
> Highland Township, lack the authority to adopt this Charter or those laws, or the
> power to assert that Highland Township, its officials, or any resident of Highland
> Township are liable for damages to the corporation as a result of provisions of this
> Charter or Township laws.

The Home Rule Charter attempts to eliminate the ability of corporations to access the

courts, which it cannot constitutionally do. Therefore, as a matter of law, § 501 of the Home

Rule Charter violates the Petition Clause of the First Amendment. Plaintiff's motion for

judgment on the pleadings will be granted in this regard.

### G. Count VIII -- The Substantive Due Process Challenge

At Count VIII, Seneca alleges that by enacting the Home Rule Charter, Highland Township "intended to deny corporations, such as Seneca, their legal and long-standing constitutional rights, including, but not limited to, their rights under the First, the Fifth, and the Fourteenth Amendments…" and that "the Township's conduct in abrogating Seneca's interest in environmental and UIC permits at Well No. 38268 is deliberate, arbitrary, irrational, exceeds the limits of governmental authority, amounts to an abuse of official power, and shocks the conscience." ECF No. 1, ¶ ¶ 108-109. In its Complaint, Plaintiff fails to identify any specific provision of the Home Rule Charter in its substantive due process challenge, but only refers to the Home Rule Charter generally; yet, in its brief in support, Plaintiff identifies § § 401, 404, and 501 as the offending sections. Nonetheless, because the Home Rule Charter was attacked generally as violative of substantive due process in the Complaint, it is appropriate to focus on any of its provisions in the Court's analysis, including the specific sections cited in Plaintiff's motion and brief in support.

The Due Process Clause of the Fourteenth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. 14 § 1. Although the face of the provision speaks only to the adequacy of procedures, the Supreme Court has held that the Due Process Clause contains a substantive, as well as a procedural, component. Nicholas v. Pennsylvania State University, 227 F.3d 133, 138-39 (3d Cir. 2000) citing Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992).

Substantive due process review is no straightforward matter. As the Third Circuit explained in Nicholas, substantive due process "is an area of law 'famous for controversy, and not known for its simplicity.'" Id. at 139, quoting DeBlasio v. Zoning Bd. Of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995). Although courts have attempted to define a "test," a bright line review has not been possible because of the very different nature of the underlying facts and rights involved in each case. "Each new claim to [substantive due process] protection must be considered against a background of constitutional purposes, as they have been rationally perceived and historically developed." Id. at 140, quoting Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 229 *1985) (Powell, J., concurring).

The Nicholas Court identified two separate threads woven into the "fabric of substantive due process" and then attempted to "untwist this tangled skein." Id. at 139. The first thread of substantive due process arises when a plaintiff challenges the validity of a legislative act, while the second thread arises out of non-legislative action. Id. The legislative/non-legislative "distinction is significant because it determines the appropriate standard of review for substantive due process challenges." RHJ Medical Center, Inc. v. City of DuBois, 754 F.Supp.2d 723, 767 (W.D. Pa. 2010). Each separate thread requires a separate analysis, although many courts and parties conflate the two and their corresponding levels of review. Careful attention must be paid.

Here, the challenged Home Rule Charter is a legislative act. Id. See also County Concrete Corp., 442 F.3d at 169. So then, the Charter is properly analyzed under the first thread of substantive due process. In this first thread, a plaintiff does not need to establish a "'protected property interest to which the Fourteenth Amendment's due process protection applies' as this standard only applies in a 'non-legislative substantive due process claim.' " RHJ Medical Center,

754 F.Supp.2d at 768-69, <u>citing</u> <u>Nicholas</u>, 227 F.3d at 139–40 and <u>County Concrete Corp</u>, 442

F.3d at 169. ("For Plaintiff's facial substantive due process challenge to the Ordinance to be

successful, [it] must 'allege facts that would support a finding of arbitrary or irrational legislative

action …'").

 When reviewing legislative acts on their face, the courts have looked for arbitrary or

irrational legislation that impermissibly goes beyond serving a legitimate state interest. <u>County</u>

<u>Concrete Corp.</u>, 442 F.3 at 169-70. Even under this lesser standard, the Home Rule Charter fails

to survive a substantive due process review. The language of the Charter itself runs afoul of

constitutional protections afforded corporations and attempts to immunize Highland Township

from clashes with current federal and state law:

> **§ 401. Depositing of Waste from Oil and Gas Extraction.** It shall be unlawful within Highland Township for any corporation or government to engage in the depositing of waste from oil and gas extraction.
>
> **§ 404. State and Federal Authority.** No permit, license, privilege, charter, or other authorization, issued by any state or federal governmental entity, that would enable any corporation or person to violate the rights or prohibitions of this Charter, shall be lawful within Highland Township.
>
> **§ 501. Corporate Privileges.** Corporations that violate this Charter or the laws of the Township, or that seek to violate this Charter or those laws, shall not be deemed to be "persons" to the extent that such treatment would infringe the rights or prohibitions enumerated by this Charter or those laws, nor shall they possess any other legal rights, powers, privileges, immunities, or duties that would infringe the rights or prohibitions enumerated by this Charter or those laws, including the power to assert that Highland Township, or the people of Highland Township, lack the authority to adopt this Charter or those laws, or the power to assert that Highland Township, its officials, or any resident of Highland Township are liable for damages to the corporation as a result of provisions of this Charter or Township laws.

Because the actual language of the Home Rule Charter highlights irrational and arbitrary behavior *de facto*, Seneca's motion for judgment on the pleadings on this claim is granted as violative of Plaintiff's substantive due process rights.

## H. Count IX - The Procedural Due Process Challenge

At Count IX, Plaintiff alleges that the Home Rule Charter's prohibition of underground injection within the Township "significantly and materially devalues Seneca's legal rights and interest related to and/or held within the Township, including Seneca's UIC permit" without any due process in violation of the procedural due process clause of the Fifth and Fourteenth Amendments. ECF No. 1, ¶¶ 113-118.

In order to trigger the protections of the procedural aspects of the Due Process Clause, a plaintiff must demonstrate a property or liberty interest. Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). See also Mathews v. Eldridge, 425 U.S. 319 (1976); Mudric v. Attorney Gen. of U.S., 469 F.3d 94, 98 (3d Cir. 2006) ("It is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie.").[7]

The Fourteenth Amendment's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). For purposes of procedural due process, property interests are "… not created by the Constitution." Id. at 577. Instead, these property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent

---

[7] Once a protected interest has been identified, a court must examine the process that accompanies the deprivation of that protected interest and decide whether the procedural due process safeguards built into the process, if any, are constitutionally adequate. Zinermon v. Burch, 494 U.S. 113, 126 (1990).

source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." Id.

Seneca argues that it has a property interest in its Underground Injection Control ("UIC") permit issued by the EPA. As a property interest is an element of its procedural due process claim, it is Seneca's burden to produce evidence of that requisite property interest. EJS Properties, 698 F.3d at 855. Seneca has not produced the UIC permit in support of its complaint or its motion for judgment on the pleadings.[8]

Accordingly, the motion for judgment on the pleadings will be denied as to this claim.

## I. Severability of Other Provisions Related to Invalid Sections

Plaintiff argues that many other provisions of the Home Rule Charter are inextricably intertwined with § § 401, 404, and 501 so that they should be severed from the Home Rule Charter. Defendants agree that these provisions should be severed.

---

[8] In a similar case, this Court reviewed a UIC permit and concluded that permit, standing alone, did not demonstrate a property interest sufficient to trigger the protections of procedural due process. Pennsylvania Gen. Energy Co., LLC v. Grant Twp., 2017 WL 1215444, at *18 (W.D. Pa. Mar. 31, 2017) ("The UIC permit is issued by the U.S. Environmental Protection Agency and serves as an "Authorization to Operate Class II-D Injection Wells" in compliance with the provisions of the Safe Drinking Water Act and its corresponding regulations. ECF No. 170-2. The federal regulations indicate that neither the permit itself or the issuance of the permit "convey any property rights of any sort, or any exclusive privilege." 40 C.F.R. § 144.51(g); 40 C.F.R. § 144.35(b). PGE points to nothing in the permit itself or the law regulating such permits that automatically creates a legitimate claim of entitlement sufficient to demonstrate a property interest. The face of the permit itself spells out that it "does not convey property rights or mineral rights of any sort or any exclusive privilege." ECF No. 170-2. Because PGE has not satisfied its burden to prove the required property interest, the motion for summary judgment will be denied.").

Sections 103-106, 109 and 110 relate to the prevention of oil and gas activities and intend to create "rights" and "standing" in residents of the Township, ecosystems, and the Township. These sections are incapable of execution by themselves without § § 401, 404, and 501.

Sections 405-408 provide for the enforcement the Home Rule Charter: § 405 makes it an offense to violate the Home Rule Charter, while § § 406-408 create the mechanism by which the Home Rule Charter should be enforced. These sections are inextricably intertwined with § 401, 404, and 501.

Sections 409, 410, and 411 are also inextricably intertwined with the offending sections. These sections provide for: the enforcement and intervention to enforce or defend the Home Rule Charter (§ 409); the elevation of the Home Rule Charter over existing state and federal laws (§ 410); and instructions to courts to liberally interpret the provisions of Article One of the Home Rule Charter (§ 411).

Because all of these provisions cannot stand on their own, these will be invalidated. See 1 Pa. C.S. § 1925; Robinson Township v. Commonwealth, 96 A.3d 1104, 1119-20 (Pa. Cmwlth. 2014) overruled on other grounds by Robinson IV, 147 A.3d 536.


An appropriate Order follows.



/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge